ALEXANDER MCALISTER, TREASURER OF THE CITY OF NEW HAVEN *vs.* MASSENA CLARK.

A bawdy-house is a public nuisance at common law.

The term "house of ill fame," in its ordinary use, is synonymous with "bawdy-house."

Where a city by-law provided that the owner of any house, used with his knowledge as a house of ill-fame, or to his knowledge reputed to be such, should be subject to a penalty, and should also be deemed guilty of causing, committing, or, as the case may be, maintaining a nuisance, it was held to refer only to such owners as have both the knowledge of such improper use of their property, and the power to prevent it, which they do not exercise.

Where a tenant, contrary to the intention of his landlord, uses his premises for a house of ill-fame, the latter would be protected from the penalty of such a by-law, if, when such improper use came to his knowledge, he should lay the matter before the proper prosecuting officers and request them to procure the abatement of the nuisance. Whether, where premises leased for so long a time and under such circumstances as to give no color to the charge of collusion between landlord and tenant, are used for a house of ill-fame, the landlord could fairly be said to be the *owner* of the property within the meaning of such by-law : *Quære.*

But where a landlord comes justly within the intent of such by-law, by his consent to such improper use, collusion with his tenant, or partnership in the profits he is amenable to its penalty.

A penalty of $50 imposed by such by-law is not excessive.

Held also, that the city had power to pass such a by-law under a provision of its charter authorizing it to make by-laws relative to nuisances.

ACTION of debt, brought to the city court for the city of New Haven, to recover a penalty of fifty dollars, under the provisions of a city by-law. The defendant demurred generally to the declaration, upon which issue was joined, and judgment given for the plaintiff. The case came by appeal to the superior court, and was there reserved upon the same pleadings for the advice of this court. The provisions of the by-law, and the allegations in the declaration of its breach by the defendant, are sufficiently stated in the opinion.

*Shelton,* in support of the demurrer.

*Watrous* and *Pardee,* contra.

HINMAN, C. J. This is an action by the treasurer of the city of New Haven for a penalty incurred under a by-law of

the city, imposing such penalty on the owners or keepers of houses of ill-fame, or assignation houses, or houses reputed to be houses of ill-fame or assignation houses. The by-law in question declares such houses to be common nuisances, and subjects the persons owning them, and having knowledge of such keeping, occupation, use and reputation, to the penalty in question, on the ground of their being deemed guilty of causing, committing, or, as the case may be, maintaining a nuisance.

The declaration charges the defendant with being the owner of a house within the city known as the Bell Tavern, which was, with the defendant's full knowledge while he was so the owner thereof, kept, occupied, used and frequented as a house of ill-fame, and was and had been during said time in fact a house of ill-fame, with the full knowledge of the defendant; and was, while so owned, occupied, kept, used and frequented as aforesaid, a nuisance; concluding with the averment that the defendant as owner thereof, by reason of the premises, was guilty of committing, causing and maintaining a nuisance in said city contrary to the said by-law, whereby an action had accrued, &c. The declaration is demurred to, and the question raised on the demurrer is, whether the city authorities under the charter, which authorizes them to make by-laws relative to nuisances, had power to make this particular by-law; and we are of opinion that the city had this power.

Bawdy houses are treated by all the writers on criminal law as public nuisances, and liable to be indicted as such; (see 1 Russell, 199;) and the counsel for the defendant does not question that by the phrase "house of ill-fame," as used in our statutes, is ordinarily meant a bawdy-house or brothel, unless there is something in connection with the phrase itself that shows that some different meaning was intended by it. Here it is obviously used in its ordinary sense in common parlance, because it is used in connection with other words the meaning of which can not be misunderstood. It is placed in immediate connection and used as nearly synonymous with assignation house, which being a house resorted to for pur-

McAlister *v.* Clark.

poses of prostitution is of course a bawdy-house or brothel. It is obvious therefore that the city authorities had full power to pass by-laws relative to houses of this description, and the question must be whether they had power to pass this particular by-law.

It is claimed that it did not possess this power for the reason that it subjects the owner of the house to the penalty merely because he has knowledge of the uses to which his property is put, when he has no power, or may have no power, to prevent its being used for any such purpose. We do not think this is the fair meaning of the word *owner* as used in this by-law. When it speaks of an owner's having knowledge of this improper use of his property, it means at least a knowledge of a use which he has power to prevent, and therefore permits. It is not necessary to go to the length of holding that a landlord in such a position should be required to institute proceedings, either to abate the nuisance at common law, or, after the conviction of the person actually keeping the house, pursuing his remedy under the statute (Revision of 1866, p. 83, sec. 356,) to obtain possession of the premises which had been thus misused, in order to shield himself from liability to the penalty imposed by this by-law. Undoubtedly these remedies were open to the defendant, and by the vigorous pursuit of them he could have prevented the improper use of his property for the unlawful purpose to which it was put. But we think that much less than this might have been sufficient to exonerate him from all blame in respect to the unlawful use of his property. Indeed if he had leased his property in good faith, with no knowledge that it was intended to convert it into a house of this description, and the tenant had, contrary to the intention and wish of the landlord, made this improper and unlawful use of it, no one would claim that, as soon as this improper use became known to him, he would be liable to the penalty of this by-law. And if in such a case he should go to the proper prosecuting officers, and inform them of the unlawful use to which his property was being subjected, and should request them to take measures to abate the nuisance, we do not think he

would be liable to the penalty. And, indeed, if the property was leased for so long a time and under such circumstances as to give no color to the charge of collusion between the landlord and the tenant in regard to the use that was to be made of it, it would be worthy of serious consideration whether, during the existence of the lease, the landlord could fairly be said to be the owner of the property within the meaning of the by-law.

No such question as would then be presented arises in this case. Here the defendant, so far as any thing to the contrary can be known from the declaration, may himself be the keeper of this house; and the lease, if there is one to any nominal keeper, may itself be merely colorable. And if we assume that the house is kept by a tenant, that tenant may be a tenant at the will of the landlord; or the tenancy may be for so short a time, and may have been created under such circumstances, and the house be so managed, as to show that the profits of this unlawful business are, to a greater or less extent, received by the defendant in what the parties may choose to call the rent of the house. In such cases the landlord should be the party liable to the penalty of this by-law, since he would be equally guilty with his more unfortunate instrument, who was nominally keeping for him and for his benefit a house of this description.

A question was made whether the by-law was not void on the ground that the penalty was too excessive. There is no force whatever in this. We think the penalty is quite small enough.

We therefore advise the superior court to overrule the demurrer.

In this opinion the other judges concurred.