## HOPSON *v*. STATE.

### Opinion delivered November 22, 1915.

1. CHANGE OF VENUE—TRUTH OF AFFIDAVITS—PREJUDICIAL ERROR.—The statute providing for changes of venue in criminal cases does not contemplate that the truth or falsity of the affidavits shall be inquired into, and the court may only determine whether or not the affiants are credible persons within the meaning of the statute; but although the court receives other evidence as to the state of mind of the inhabitants of the county, a judgment of conviction will not be reversed when no objection was made to the action of the court.

2. CHANGE OF VENUE—DISCRETION OF COURT.—In a criminal prosecution, the trial court *held* properly to have refused to order a change of venue.

3. HOMICIDE—SUFFICIENCY OF EVIDENCE.—Evidence held sufficient to show that defendant was guilty of second degree murder.

4. APPEAL AND ERROR—INSTRUCTIONS—DUTY TO OBJECT SPECIFICALLY.— In a prosecution for homicide, the court in instructing the jury on the subject of mitigating circumstances, read to the jury Kirby's Digest, § 1765. *Held*, an objection to the court's action on the ground that it might mislead the jury as to the burden of proof, should have been made specifically to the trial judge.

5. TRIAL—ARGUMENT OF PROSECUTING ATTORNEY.—Comment of the prosecuting attorney as to defendant's failure to have certain witnesses testify, *held*, not prejudicial.

Appeal from Cleveland Circuit Court; *Turner Butler,* Judge; affirmed.

*H. S. Powell,* for Appellant.

The change of venue should have been granted. Kirby's Digest, § 2318; 85 Ark. 536.

The court should have instructed the jury to return a verdict of not guilty.

The court erred in its instructions to the jury.

The argument of the prosecuting attorney was prejudicial.

*Wallace Davis*, Attorney General; *John P. Streepey*, Assistant, for appellee.

The court did not err in denying the petition for change of venue.    98 Ark. 139.

There was no error of the court in refusing to instruct the jury to return a verdict of not guilty.    96 Ala. 24; 13 Tenn. (7 Yerg.) 259.

Instructions Nos. 16 and 18 were properly given.

The argument of the prosecuting attorney was not prejudicial.

HART, J.    Carroll Hopson was indicted for the murder of Frank Armstrong, charged to have been committed by cutting him with a knife on the 23d day of April, 1914. He was tried and convicted of murder in the second degree, his punishment being fixed by the jury at five years in the State penitentiary.    From the judgment of conviction he has duly prosecuted an appeal to this court.

It is first insisted by counsel for the defendant that the court erred in not granting him a change of venue.

W. W. Mitchell, I. E. Moore, E. R. Buster and J. F. Wynne were supporting affiants to the defendant's petition for a change of venue.

Wynne testified that he lived in the northern part of Cleveland County and that he was fairly well acquainted with the people in the county.    He stated that he had heard forty or fifty people discuss the killing and that the sentiment seemed to be against the defendant. He frankly stated, however, that he could not speak for the whole county, and that he based his opinion on the opinion of those with whom he had talked about the case.

Ira Moore testified that he had lived at Rison for the past ten years and had formerly been sheriff of the county and had a general acquaintance with the people of every township in the county.    He admitted, however, that he had not talked with very many people outside of the town of Rison about the commission of the crime and that his

opinion was based upon what people with whom he had talked had said.

Buster was a storekeeper at Kingsland which was about three miles from where the crime was committed. On cross-examination he stated that he lived on the west side of the river and that that side of the river contained about 40 or 45 per cent. of the inhabitants of the county, that he had only been in one township since the killing and only stayed there three or four hours at the time; that a good many people, however, from another township on the west side of the river traded at his store and he had heard them talk about the killing. He also had an acquaintance in the eastern part of the county but it is not shown that he had been in the eastern part of the county since the commission of the crime or that many people from that portion of the county had come to his store.

(1) Other witnesses were examined by the court, the testimony of some of whom tended to show that the minds of the inhabitants of the county were not prejudiced against the defendant. This testimony was not admissible because our statute providing for a change of venue in criminal cases does not contemplate that the truth or falsity of the affidavits shall be inquired into. The court can only determine whether or not the affiants are credible persons within the meaning of the statute. It does not appear, however, that objection was made to the other evidence received by the court and for that reason the judgment will not be reversed for receiving it. See *Williams* v. *State,* 103 Ark. 70.

(2) It will be noted that the supporting affiants had only been in a few localities in the county and from the cross-examination of these witnesses we think the circuit court was justified in finding that their information was not sufficient to form an opinion as to the state of the minds of the inhabitants generally of the county.

W. W. Mitchell, one of the supporting affiants, was not examined. But if it be conceded that he was a credible person within the meaning of the statute his affidavit

alone was not sufficient to support the petition of the defendant for the statute requires the affidavits of two credible persons.

We have not attempted to set out the examination and cross-examination of the supporting affiants at length but we have carefully considered their testimony. Very recently in passing upon this question we said that much is left to the fair discretion and judgment of the trial court. *Dewein* v. *State*, 120 Ark. 302. See also *Ford* v. *State*, 98 Ark. 139.

Careful consideration of the testimony on this point leads up to the conclusion that the circuit court did not abuse its discretion in refusing to grant the defendant a change of venue.

It is next insisted by counsel for defendant that there is not sufficient testimony to warrant the verdict. In this contention we can not agree with counsel. The facts as proved by the State are substantially as follows:

The widow of the deceased, Frank Armstrong, testified that her husband was killed on the night of April 23, 1914, near their home, which was about three miles from Kingsland, in Cleveland County, Arkansas; that her husband had been away from home at work all day and came home that night and went to bed soon after supper; and that between 7 and 8 o'clock Carroll Hopson called her husband out.

She was then asked this question: "Tell the jury what you know about Carroll coming and calling him?" and answered, "I know that he came up there and Frank went out on the gallery and stayed out there a few minutes and came back in the room and slipped on his overalls and shoes and went off."

She was then asked: "Did he say when he went out what he was going to do?" and answered, "I asked him who it was, and he said, 'Carroll,' and I asked what he wanted and he said he didn't know."

Subsequently the court told the jury not to consider what Frank Armstrong told his wife when he left the room to go out.

Mrs. Armstrong further testified that her husband was brought home dead two or three hours thereafter. She said that her husband and herself were on visiting terms with Kenneth Johnson and his wife and with the defendant and his family, and that they were in the habit of getting buttermilk from the defendant and that he did not charge them anything for it.

Two other witnesses for the State testified that they were informed of Armstrong's death and went to the place in the road where he lay a little more than a hundred steps from his house; that a barlow knife was stuck up in the ground near him but that there was no blood on the knife at all; that there were nine wounds on his body made with a knife and that these wounds caused his death.

It was also shown that the deceased weighed between 150 and 160 pounds and was six feet tall, but that he was not very strong and had a plaster on his stomach at the time he was killed.

Another witness for the State testified that he heard the defendant make a statement about the killing the next day after it occurred and that the defendant told him that he got out lucky, that he got only one wound and that on the back of his hand. The defendant further stated that Johnson cut him, the defendant, while he was holding Armstrong. On cross-examination he stated that he did not testify that the defendant told him he was holding Armstrong for Johnson to cut him.

Another witness for the State testified that he lived with the defendant at the time of the killing and that on the night of the killing he went to the home of Kenneth Johnson, who lived near by, and that the defendant and his wife went there after supper and before he did; that as he went to Johnson's house he met Johnson and the defendant coming away from there; that some time afterward, on the same night, Johnson and the defendant returned together to the house and that Johnson said, in the presence of the defendant, that Frank—referring to the deceased—had "knifed" him (Johnson) and that he

(Johnson) had "knifed" him (referring to the deceased) some, too.

The defendant himself did not take the stand, and no evidence was adduced in his behalf except that of three witnesses who testified that his reputation for peace and quietude in the community where he lived was good.

(3)   From this testimony we think the jury was fully warranted in finding the defendant guilty. It is fairly deducible from the evidence that the defendant, the deceased and Kenneth Johnson lived in the same neighborhood and that after the deceased retired on the night he was killed the defendant came and called him out; that the deceased left his home and went down the road about a hundred yards to a point where he was found dead. Kenneth Johnson admitted afterward that he had cut the deceased and the defendant admitted that he was holding the deceased while Johnson was cutting him. It is true he did not testify that he was holding the deceased in order that Johnson might cut him, but the jury were warranted in finding this to be true from the surrounding circumstances. The deceased had gone to bed early that night, thus showing that he did not anticipate any difficulty with any one. Later he was called out by the defendant and persuaded by him to put on his overalls and to leave the house with him. Soon afterward he was found dead with nine knife wounds on his body. Johnson admitted cutting him; the defendant admitted holding him while Johnson cut him. According to the testimony of Mrs. Armstrong these parties were neighbors and friends so far as she knew. Under the circumstances the jury were warranted in finding that the defendant and Johnson called the deceased out for the purpose of killing him and that they did so.

(4)   In instructing the jury the court read to them section 1765 of Kirby's Digest, as follows: "The killing being proved, the burden of proving circumstances of mitigation that justify or excuse the homicide shall devolve on the accused, unless by the proof on the part of the prosecution it is sufficiently manifest that the offense com-

mitted only amounted to manslaughter, or that the accused was justified or excused in committing the homicide.''

Counsel for the defendant insist that the court erred in giving this instruction because it might be susceptible of the meaning that if the State showed that any one killed the deceased the burden of proving circumstances of mitigation was on the defendant.

If the defendant thought the instruction susceptible of the meaning now ascribed to it, he should have made the same the object of a specific objection, and not having done so, is not now in an attitude to complain. *Johnson* v. *State,* 120 Ark. 193, and cases cited.

In this connection it may be said that the court gave other instructions, telling the jury that it should acquit the defendant unless they believed from the evidence beyond a reasonable doubt that he was guilty. The court instructed the jury fully and fairly on the question of reasonable doubt.

It is next insisted by counsel for the defendant that the court erred in giving an instruction on self-defense. In this instruction the court told the jury under what circumstances a person would be excused for killing another upon a sudden quarrel. Counsel claim that it was erroneous to give the instruction because there was no testimony tending to show that there was any sudden encounter at the time of the killing. The instruction complained of could not possibly have resulted in any prejudice to the defendant. It is not contended by counsel for the defendant that the defendant, if guilty at all, is not guilty of the grade of the offense for which the jury returned a verdict and there can be no difference of opinion that the person who killed the deceased was at least guilty of murder in the second degree. In this case the only issue raised by the defendant was who committed the act which caused the death? There is no question as to the degree of the offense. The only question is the connection of the defendant with it. The sole contention of defendant's counsel in this respect is that the judgment should be reversed because there is not sufficient testimony to connect

the defendant with the commission of the offense.    See *McGough* v. *State,* 113 Ark. 301.

(5)    The prosecuting attorney in his argument to the jury said: ''We have put these things together because they have not favored us with their testimony,'' and it is urged by counsel for the defendant that the judgment should be reversed because of this remark.    It is insisted that the remark amounted to a criticism of the failure of the defendant to testify in the case.    We do not think so. The defendant did not place any witness on the stand, other than character witnesses, although it was apparent from the record that other persons were present when the killing occurred.    We think the prosecuting attorney clearly intended to comment upon the failure of the defendant to put these witnesses on the stand.

Again, the prosecuting attorney commented upon the failure of the defendant to put Kenneth Johnson on the stand to detail the circumstances warranting the killing and counsel for the defendant insists that this is error calling for a reversal of the judgment.    We do not agree with him.    The record shows that Johnson resided in the neighborhood and that he was seen to leave his house on the night of the killing with the defendant before the killing and that they together returned to Johnson's house after the killing and that they were on apparently friendly terms.    Therefore, we think the prosecuting attorney was justified in the remarks.

Other remarks made by the prosecuting attorney are assigned as reversible errors, but an examination of the record shows that in each instance the court stopped the prosecuting attorney and admonished the jury that they should pay no attention whatever to the remarks objected to.    The court was very emphatic in its statements to the jury, and we think fully removed any prejudice, if any, that may have resulted to the defendant from the remarks of the prosecuting attorney.

We have carefully examined the record and find no prejudicial errors in it.

The judgment will be affirmed.