RHODES *v.* STATE.

4385                                                  189 S. W. 2d 379

Opinion delivered June 18, 1945.

*Floyd Terral,* for appellant.

*Guy E. Williams,* Attorney General, and *Oscar E. Ellis,* Assistant Attorney General, for appellee.

ROBINS, J. Appellant, operator of a tourist camp near Little Rock, Arkansas, asks us to reverse judgment of the lower court, based on trial jury's verdict, sentencing him to pay a fine of $250 and to be imprisoned three months on a charge against him for violating § 1 of Act 240 of the General Assembly of Arkansas, approved March 16, 1943, alleged to have been committed by appellant by renting a double cabin and a single cabin to three soldiers from Camp Robinson, Arkansas, when he knew or had good reason to know that said cabins were to be used for the purpose of assignation by said soldiers and their three young female companions. The jury appended to their verdict a recommendation, disregarded by the lower court, that the sentence of imprisonment be suspended.

These grounds for reversal of the judgment against him are urged by appellant:

(I) That the act here involved was only intended to prohibit ''commercialized vice'' and that renting a cottage even with knowledge that an ''isolated act'' of sexual intercourse, in which no financial consideration was involved, was to be committed therein did not constitute an offense.

(II) That the evidence was insufficient because there was no proof that an act of intercourse was com-

mitted by any of the named parties or that appellant knew that such act was to be committed.

(III) That the verdict against appellant was inconsistent with the other verdicts rendered at the same time. The two girls mentioned in the information against appellant were charged under separate information with the offense of prostitution and lewdness. The cases against these girls were consolidated for trial with the case against appellant, and appellant argues that, since the jury acquitted the girls, the jury could not properly have found that appellant was guilty as charged.

(IV) That the court erred in giving the jury an instruction, set forth in detail hereinafter, in answer to an inquiry from the jury, in regard to the propriety of a recommendation for a suspenion of the sentence of imprisonment.

## I.

Section 1 of Act 240 of the General Assembly of Arkansas of 1943 provides: "Hereafter any person who shall offer, or offer to secure, another for the purpose of prostitution, or for any other lewd or indecent act; or who shall receive or offer or agree to receive any person into any house, place, building, tourist camp, or other structure, or vehicle, trailer, or other conveyance for the purpose of prostitution, lewdness, or assignation, or to permit any person to remain there for such purpose; or who shall direct, take, or transport, or offer or agree to take or transport, or aid or assist in transporting, any person to any house, place, building, tourist camp, other structure, vehicle, trailer, or other conveyance, or to any other person with knowledge or having reasonable cause to believe that the purpose of such directing, taking, or transporting is prostitution, lewdness, or assignation; or who shall knowingly own any place, house, tourist camp, other structure, or part thereof, or trailer or other conveyance used for the purpose of prostitution, lewdness, or assignation, *or who shall let, sublet, or rent any such place, premises, or conveyance to another with knowledge or good reason to know of the intention of the lessee or rentee to use such place, premises, or convey-*

*ance for prostitution, lewdness, or assignation;* or who shall aid or abet, or participate in the doing of any acts herein prohibited, shall be guilty of a misdemeanor and upon conviction for the first offense under this section shall be punished by imprisonment in the county jail for a period not less than three months nor more than six months and by a fine of not less than $100 and not to exceed $250, and upon conviction for any subsequent offense under this section shall be punished by imprisonment in the county jail for a period of not less than six months nor more than one year, and by a fine of not less than $250 and not to exceed $500." (Italics supplied.)

There is nothing in this act to indicate that the carrying on of "commercialized vice" in the premises let is an essential to guilt of the owner; nor is there anything therein to require, before conviction of the owner, that it be shown that more than an "isolated act" was to be committed therein. The offense denounced by the act (so far as this case is concerned) is the renting of premises for the purpose of assignation. The word "assignation" has a well-understood meaning. It means an appointment, "used chiefly of love interviews, and now commonly in a bad sense." Webster's New International Dictionary. See, also, *People ex rel. Bradford, Dist. Atty.* v. *Arcega,* 193 Pac. 264, 49 Cal. App. 239; *McAlister* v. *Clark,* 33 Conn. 91; *State* v. *Bragg* (Mo. App.), 220 S. W. 25; and *State* v. *Keithley,* 127 S. W. 406, 142 Mo. App. 417. The definition of the word "assignation" in the statute did not change its meaning from that ordinarily given it. We conclude that under this statute it is made an offense to let premises to be used by a man and woman for illicit intercourse, whether there be involved "commercialized vice" or whether the premises are used for one or more immoral acts.

## II.

The provisions of § 1 of Act 240, *supra,* for violation of which appellant was convicted, are aimed against the letting of premises to men and women for an immoral purpose. The letting of the premises and the knowledge (or good reason to know) on the part of the accused of

the immoral purpose on the part of the tenants are the essential elements of the offense; and it is not necessary for the state, in order to establish guilt, to prove that the immoral purpose of those obtaining the use of the premises is actually carried into effect.

Appellant, in this connection, insists that it was not shown that he had knowledge or good reason to know that these couples intended to use the cottages for an improper purpose. The testimony shows that three soldiers from Camp Robinson, accompanied by three young women, came in a car owned by one of the soldiers to appellant's tourist camp a few miles east of Little Rock at about two o'clock in the morning; that the soldiers rented from appellant the cottages, two couples taking a double cottage (two bedrooms with garage between) and the other couple taking a single cottage, $15 being paid to appellant for the use of the cottages; that no question was asked of the couples as to their marital status and that only the men were called upon to register, and they signed only their own names on the registration cards. These cards were introduced in evidence by a deputy sheriff and showed that "Mr. and Mrs." appeared before the names of two of the men and "& wife" appeared after the name of the other. The two soldiers who testified denied writing anything more on the cards than their respective names, and in one instance the army serial number of the soldier. They testified positively that they did not register as married couples. The handwriting on, as well as the appearance of, these cards might well have led the jury to believe that "Mr. & Mrs." and "& wife" had been placed thereon by appellant, in an effort to evade responsibility. Some, if not all of these young people, had been drinking intoxicating liquor when they arrived at appellant's place. The investigation of the affair by officers occurred by reason of the fact that one of the soldiers was found dead, and his female companion in a dying condition, on the bed in one of the cottages the following afternoon. The other four members of the party were violently ill, but all recovered.

The jury found that, under the circumstances shown by this testimony (and none of it was disputed, as appel-

lee offered no testimony), appellant knew, or should have known, that these three young men engaged appellant's cottages for purposes not purely platonic. We cannot say that this finding by the jury was without support in the testimony.

### III.

The two surviving young women, charged under separate information with violation of § 2 of said Act 240 (which penalizes engaging in prostitution, lewdness and assignation, as well as entering any structure for any such purpose), for their connection with the affair, were tried at the same time appellant was tried and, since the jury acquitted the young women, it is urged by appellant that this necessarily exonerated him. We cannot agree. Whether it is essential that verdicts in different criminal cases, begun under separate informations and consolidated only for trial, must be consistent, we do not deem it necessary to decide, because we cannot say that there is any inconsistency between the verdicts here. The gravamen of the offense charged against appellant was that he rented rooms for assignation, and the offense was completed when he made the agreement with these young couples to let them use his rooms, knowing, or having good reason to know, that the rooms were to be used for an immoral purpose. The fact that the immoral purpose may not have been actually accomplished would not exculpate appellant; and it is possible that the jury gave the young women the benefit of the doubt and found that, while the young men had an evil intention, the young women, on account of their youth and inexperience or their intoxication, did not enter the cottages with an improper purpose in mind.

### IV.

The record shows that after the jury had retired to consider their verdict they returned into the courtroom, whereupon the following colloquy occurred:

"Foreman: 'We need a little additional instruction.' The Court: 'I will hear you, but I will not instruct you further without the permission of counsel.' Foreman: 'What we want to know is this: Can we put the maximum

or the fine with a suspended sentence?' The Court: 'Yes, you could find a person guilty, or more than one whatever the case may be, and fix the penalty both as to the fine and the imprisonment, there must be both as specified by the statute. You can recommend as to part or all of the penalty that you have fixed. In other words, if you want to suspend the imprisonment, make the recommendation to suspend the imprisonment, which is part of the penalty and leave the fine to be paid. Does that answer your question?' Foreman: 'Yes, that answers the question.' Mr. Terral: 'Save our exceptions to the remarks of the court.' The Court: 'Exceptions saved.' "

Appellant argues that this supplemental instruction was erroneous because it was a statement by the court that the jury could suspend a part or all of the sentence, and, for that reason, amounted to the court holding out an inducement to the jury to return a verdict of guilty. We do not think that this instruction is susceptible of such an interpretation. When the court said: "You can recommend as to part or all of the penalty you have fixed," the jury could only have understood that they were to fix the punishment and might, if they so desired, make a recommendation to the court as to a suspension of all or part thereof. The fact that the jury in their verdict did fix a penalty and, in a separate sentence of the verdict, did make a recommendation as to suspension of the imprisonment shows clearly that the jury did not understand that it lay within their power to eliminate the imprisonment feature from the sentence. The jury evidently understood the language of the court to mean what the court intended to convey; and, if the language of the court had seemed so inept or ambiguous as to convey the wrong idea to the jury, counsel for appellant would doubtless have made specific objection to the objectionable part of the court's statement, as he was required to do. "If defendant thought the instruction susceptible of the meaning now ascribed to it, he should have made the same the object of a specific objection, and not having done so, is not now in an attitude to

1050

complain. *Johnson* v. *State,* 120 Ark. 193, 179 S. W. 361, and cases cited." *Hopson* v. *State,* 121 Ark. 87, 180 S. W. 485.

The judgment of the lower court is affirmed.