WARFORD AND CLIFT v. STATE.

4537                                          216 S. W. 2d 781

Opinion delivered January 17, 1949.

424

*J. C. Cole,* for appellant.

*Guy E. Williams,* Attorney General, and *Arnold Adams,* Assistant Attorney General, for appellee.

Holt, J. Appellants, Herbert Warford and Billy Clift, were indicted for the crime of rape, tried, and convicted of the lesser offense of carnal abuse. Each was adjudged to serve a sentence of one year in the State Penitentiary.

For reversal, appellants say:

"(a) The evidence was insufficient to support a verdict of accessory to carnal abuse against Billy Clift and the jury should not have been instructed on this point.

"(b) That the rights of the appellants were highly prejudiced by the court's coercive bargaining with the jury for a verdict conditioned upon a suspension of sentence and then grossly abusing its discretion by refusing to carry out the bargain made with the jury.

"(c) That the rights of the appellants were prejudiced by the court's Instruction No. 10 eliminating a jury issue as to the age of the prosecuting witness."

(a)

It is well settled that "carnal knowledge of a female is necessary to constitute rape; and when the female is under sixteen years of age, carnal abuse is included in that offense." *Threet* v. *State,* 110 Ark. 152, 161 S. W. 139.

The evidence in this case was abundantly ample to support the jury's verdict against each of the appellants. The prosecuting witness, a girl fifteen years of age, testified that appellant, Clift, held her while Warford criminally assaulted her. Her evidence alone was sufficient if believed by the jury to support the verdicts. In fact, appellants frankly concede that the evidence, when viewed in the light most favorable to the State, was sufficient to have sustained a conviction of rape against Warford and accessory to rape against Clift, and also that it was sufficient to sustain the verdict of carnal abuse against Warford, which the jury rendered in this case.

We quote from their brief: "It is conceded that when viewed in the light most favorable to the State, as it must be viewed on appeal, [the evidence] would have been sufficient to have sustained an outright verdict of rape against Warford and accessory to rape against Clift . . . Again, we concede that the testimony when viewed in its most favorable light was sufficient to sustain the verdict of carnal abuse against Warford . . ."

It is insisted, however, that the evidence is not sufficient to convict Billy Clift of accessory to carnal abuse. We cannot agree. An accessory under the statute (§ 2934, Pope's Digest) "is he who stands by, aids, abets, or assists, or who, not being present aiding, abetting or assisting, hath advised and encouraged the perpetration of the crime," and (§ 2935) "he who thus aids, assists, abets, advises or encourages shall be deemed in law a principal, and be punished accordingly."

Since, as indicated, Clift assisted Warford in the commission of the crime, he thereby became a principal and subject to the same punishment meted out to Warford. The jury was properly instructed on this point. *McCracken* v. *State,* 213 Ark. 915, 214 S. W. 2d 84.

### (b)

The record reflects that following the conclusion of all the testimony, the instructions and argument of counsel, the jury, after deliberating for a time, returned into

open court and the following colloquy occurred: "Q. Is it possible the defendants could be given a suspended sentence? The Court: Of course that is always possible. Foreman: We would like to have an answer 'yes' or 'no.' The Court: The jury would have to pass on that, make its recommendations in their verdict, pass upon the number of years and make their recommendations in the verdict before I could be warranted in making it. I have been making it a practice all through the years if anybody is tried by a jury then I will let the verdict of the jury stand unless the jury makes recommendations. Thereupon, the jury retired to further consider of its verdict and presently returned into open court the following verdicts:

" 'We, the jury, find the defendant, Herbert Warford, guilty of carnal abuse and fix his punishment in the State Penitentiary for a term of one year.' 'We recommend he be given a suspended sentence.'

" 'We, the jury, find the defendant, Billy Clift, guilty of carnal abuse and fix his punishment in the State Penitentiary for a term of one year.' 'We recommend he be given a suspended sentence.' "

The Court refused to suspend sentence in either case and appellants earnestly argue that the Court's refusal to so do was error, after having given to the jury the supplemental instruction, *supra,* which they assert told the jury, in effect, that the Court would grant a suspended sentence at the jury's request and that the Court thereby divested itself of any discretion in the matter. We think the meaning of the Court's supplemental instruction to the jury down to the last sentence is perfectly clear, which was, in effect, that it was possible for the defendants to be given suspended sentences. It will be noted that he did not say that in such circumstances he would be compelled to follow the jury's recommendation. Nor do we think that the last sentence in the instruction, when considered in connection with and in the light of the first part of the Court's remarks, though perhaps not as clear as it might have been, told the jury, in effect, that suspended sentences would be granted if

the jury so requested. If these remarks of the Court appeared to appellants to be ambiguous and misleading, it became their duty to interpose specific objections at the time in order to afford the trial court an opportunity to clarify this supplemental instruction, if necessary. The record reflects that appellants made no objections whatever to this supplemental instruction of the Court.

In the recent case of *Rhodes* v. *State,* 208 Ark. 1043, 189 S. W. 2d 379, the question presented here arose, in a similar situation, and there we said: ''If the language of the court had seemed so inept or ambiguous as to convey the wrong idea to the jury, counsel for appellant would doubtless have made specific objection to the objectionable part of the court's statement, as he was required to do. 'If defendant thought the instruction susceptible of the meaning now ascribed to it, he should have made the same the object of a specific objection, and not having done so, is not now in an attitude to complain.' ''

### (c)

Consideration of Instruction No. 10 requires determination of the Court's action in telling the jury that ''it is undisputed that the prosecutrix, Carolyn Phelps, was under the age of sixteen years at the time of the alleged crime.'' The question is whether this was a comment on the weight of evidence and within the restrictions of Article 7, § 23, of the Constitution. If it be urged that the statement had the effect of telling the finders of fact that Carolyn *was* under sixteen, then prejudice resulted, for the girl's physical proportions, her maturity of expression, and similar attributes, could have been such as to contradict what all of the witnesses had testified to regarding the date of birth. But the Court did not, in express terms, say that the prosecuting witness ''was under sixteen years of age at the time of the alleged crime.'' Placing a common sense construction on the words used, applying them to all of the facts developed in the jury's presence, and considering all of the instructions, the only meaning that could with reason be applied is that no witness had testified in direct or

inferential contradiction to the affirmative statements from the stand that Carolyn was born in 1932.

Finding no error, the judgment is affirmed.

GEORGE ROSE SMITH, J., dissenting. The jury were evidently reluctant to convict the appellants, there being sharp conflicts in the testimony. Before reaching their verdict they requested a yes or no answer as to the imposition of a suspended sentence. The question does not admit of a definite answer, but the court failed to say so. He said that the jury would have to pass on it and strongly intimated that he always followed such recommendations. Regardless of how a grammarian might interpret the court's language, I think it a certainty that the jury received the impression that their recommendation would be followed and that the verdict was returned on that assumption. We have held that it is reversible error for the trial court to promise clemency, thus offering an inducement for a finding of guilty in doubtful cases. *Bethel* v. *State,* 162 Ark. 76, 257 S. W. 740, 31 A. L. R. 402; *Pendleton* v. *State,* 211 Ark. 1054, 204 S. W. 2d 559.

Nor do I understand why the accused should be required to make objection in the circumstances shown here. Their silence meant only that they were willing to risk a reluctant conviction as a means of obtaining suspended sentences. Had the trial court granted this clemency, I should agree that they would have no ground for complaint. But when they risked their freedom and won the gamble, I think the refusal to suspend the sentence becomes a trap which we should not approve. My vote is to grant a new trial.

MILLWEE, J., joins in this dissent.