THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* GLORIA GOLDMAN *et al.,* Defendants-Appellants.

(No. 11817;

Fourth District—August 30, 1972.

TRAPP, P. J., dissenting.

Donald M. Reno, Jr., of Reno, O'Byrne & Kepley, of Champaign, for appellants.

Basil G. Greanias, State's Attorney, of Decatur, (Ronald L. Carpel, Assistant State's Attorney, of counsel,) for the People.

Mr. JUSTICE SMITH delivered the opinion of the court:

██ The propriety of a temporary injunction is before us. It restrains the display and dissemination of pornography and the promotion of a "Swingers Club"—"restraining and enjoining said defendants \* \* \* from doing business \* \* \* at a place known as the 'Adult Book and Cinema Shop' and from displaying or disseminating lewd material and promoting a 'Swingers Club' in said place until further notice of this court". Assuming (as we can) that the complaint for injunction is sufficiently specific and otherwise adequate as to form, the question remains as to whether there exists a legal basis on which to bottom it and this must be found somewhere other than in the obscenity section of our Criminal Code. (Ill. Rev. Stat. 1971, Sec. 11—20, ch. 38.) Equity, as we know, will not enjoin violations of the criminal law—the Criminal Code *is*, so to speak, itself an injunction, but in enforcing its commands *vis a vis* putative "contemnors" we deal with them, not by contempt, *sans* jury, where the quantum of evidence need only preponderate, but as the Criminal Code otherwise most distinctly mandates. The only convenient niche, it would seem, in which to fit the equitable relief here granted is found, if at all, in the law of nuisances and the concomitant power of equity to abate them.

Thus, we arrive at the pivotal question: Are premises where obscene materials can be viewed or sold a nuisance? If it is, then surely equity has the power to abate such by injunction. But again, are such places nuisances? We are assured that they are and are referred to section 1 of our Public Nuisance Act passed in 1915. (Ill. Rev. Stat. 1971, sec. 1, ch. 100½.) In reads *in toto*:

"That all buildings and apartments, and all places, and the fixtures and movable contents thereof, used for purposes of lewdness, assignation, or prostitution, are hereby declared to be public nuisances, and may be abated as hereinafter provided. The owners, agents, and occupants of any such building or apartment, or of any such place shall be deemed guilty of maintaining a public nuisance, and may be enjoined as hereinafter provided."

Suffice it to say there are no cases to date which hold that "pornoshops"

are nuisances under this statute or for that matter, nuisances—period. Indeed, though it is *obiter,* our Supreme Court recently stated in *People v. Movies, Inc.,* 49 Ill.2d 85, 273 N.E.2d 366:

"* * * And while there is statutory authority for the abatement of nuisances in the case of places used for prostitution (Ill. Rev. Stat. 1969, ch. 100½, pars. 1 through 11), and places used for the purpose of using, keeping, or selling narcotic drugs (Ill. Rev. Stat. 1969, ch. 100½, pars. 14 through 25), or used as gambling places (Ill. Rev. Stat. 1969, ch. 38, par. 28—3), we are not aware of any comparable statutory proceeding applicable to obscene material * * *."

■■ It appears to us too, that this statute is aimed solely and only at houses of prostitution. Only if we can equate the statutory "lewdness" with "obscenity", would we be justified in characterizing "places" for its dissemination and display as public nuisances. Obviously, the words "assignation" or "prostitution" in the statute, even with considerable stretching, can hardly be said to cover obscenity. Possibly "lewdness" in a given context might cover "obscenity" as defined in the Code—a thing is obscene if its predominant appeal is to prurient interest, and if it goes substantially beyond customary limits of candor—but not here, as we interpret its meaning. The word "lewdness" is in disjunctive seriatim with "assignation or prostitution". That aid to statutory construction, *noscitur a sociis, i.e.,* associated words are of assistance in determining the exact meaning to be given a certain word, prevails here, in our opinion. Legislative words are not inert and derive vitality from the obvious purposes at which they are aimed. To fix purpose, we must read text in context and if a word is known by the company it keeps, then "lewdness" is synonymous with prostitution. This aid contemplates that where two or more words of analagous meaning are employed together in a statute, they are understood to be used in their cognate sense, to express the same relations, and give color and expression to each other. For example, an "assignation" could be an innocent appointment, a chaste tryst, or a rendezvous (even with destiny), at least those are meanings that can be so ascribed to it, but not here in its context with "lewdness" and "prostitution". Thus, "assignation", a euphemism coined years ago to protect the hypersensitive, is synonymous with "prostitution". So, too, with "lewdness"—it must equate with "prostitution", and "assignation" in the sense just described, if we are to follow the rule of *noscitur a sociis* and adopt that sense of the word which best harmonizes with its setting.

■■ It would be judicial legislation for us to read into the Public Nuisance Act a meaning that is not there. Courts should eschew reading into statutes their personal predelictions. What is or is not a nuisance

must be legislatively determined. So far as this may be a lapse in the enforcement of the obscenity law, it is a limitation which the legislature has seen fit to ignore, and which we cannot gainsay, even if we would. The present interpretation has been too widely accepted in the past for us to overrule or add to it now.

■■ We conclude that the Act does not cover the activity here enjoined. The fact that a place, in addition to disseminating and displaying obscene materials is also a place where a cognate activity, a "Swingers Club", is promoted, does not alter the situation in our opinion. The statute simply does not cover these "purposes". Whether it ever could even under the Illinois or Federal constitutions is something we need not now decide. Accordingly, the temporary injunction was improvidently issued. Being improvidently issued, this matter is remanded with directions to dissolve the temporary injunction and to allow the motion to strike the complaint as such does not state a cause of action.

Reversed and remanded with directions.

CRAVEN, J., concurs.

Mr. PRESIDING JUSTICE TRAPP dissenting:

I dissent from the conclusion that the statute at issue does not cover the activities shown by the record. A substantial point of difference is the determination that the matters within the scope of the statute relate to or be equated with commercial prostitution. It appears that the opinion abandons the plain meaning of words.

Ill. Rev. Stat. 16, ch. 38, par. 11—14, defines prostitution in the context of "acts for money". Webster's Third New International Dictionary defines assignation as an appointment of time and place especially for acts of illicit sexual relations. It is the use of premises regardless of whether there is commercialized vice. (*Rhodes v. State*, 208 Ark. 1043, 189 S.W.2d 379.) In the context of literature and history, assignation is a thing apart from the statutory prostitution or whorehouse.

Again, we cannot agree that lewd must be equated with commercial prostitution. Lewd is defined in terms synonymous with obscene, salacious and sexually licentious. (Webster's Seventh New Collegiate Dictionary.) The opinion to the contrary notwithstanding, Black's Law Dictionary shows lewd synonymous with obscene or lascivious.

The plain language of the statute announces three categories of nuisance, *i.e.*, the lewd or obscene designed to incite lust or depravity albiet without necessarily immediate contemporaneous instant sexual acts; assignation in the sense of illicit sex relations albiet without "acts for money", and finally the statutory prostitution.

The trial court made an express finding that the premises were used for promotion of assignation, and there is testimony which supports such conclusion in the context of non-commercial prostitution.

Again, the opinion does not make clear the evidence before the trial court as to a wall of the premises covered with pictures and photographs showing only hard core pornography as described in *People v. Ridens,* 51 Ill.2d 410, 282 N.E.2d 691, with the addition of matters showing beastliness. *Ridens* seems to determine that some matters may be obscene as a matter of law.

I cannot agree that the record shows that the temporary injunction was improvidently granted.