Edelman Bros., Inc. et al., Appellees, v. Charles Baikoff et al., Appellants.

## Gen. No. 37,729.

Opinion filed November 27, 1934.

KAMFNER, HALLIGAN & MARKS, for appellants; EDWIN A. HALLIGAN and IRVING BILTON, of counsel.

WEISSENBACH, HARTMAN, CRAIG & OKIN, for appellees; HARRY OKIN, of counsel.

MR. PRESIDING JUSTICE GRIDLEY delivered the opinion of the court.

This interlocutory appeal is prosecuted by seven defendants from an order of the circuit court of Cook county, entered July 13, 1934, granting a temporary injunction against them and five others, based upon the allegations of complainants' verified bill, filed July 10, 1934. In the order, after reciting that the cause came on to be heard upon complainants' motion and upon notice to the 12 defendants and they being present in court or represented by counsel, and upon arguments being had, etc., it is adjudged and decreed that defendants (naming them), their officers, agents, employees, etc., and all persons acting under their con-

trol, and each of them, be restrained and enjoined, until further order of the court, "from standing upon, using or occupying the public sidewalks in front of their respective places of business on Halsted street, Chicago, or the public sidewalks adjacent or contiguous thereto, for the purpose of selling or seeking to sell articles of merchandise to pedestrians or passersby, or in asking for or soliciting trade or patronage of any pedestrian or passerby using the aforesaid public sidewalks, and from making, causing, permitting or allowing to be made upon said public street (Halsted street), where defendants or any or either of them are engaged in business, or in such close proximity thereto as to be distinctly and loudly audible upon such public street, any noise of any kind by crying, calling or shouting, for the purpose of advertising any goods, wares or merchandise, or of attracting attention or inviting the patronage of any person to any of the businesses operated by the aforesaid defendants, or any or either of them, and from interfering with or impeding any pedestrian or passerby upon the public sidewalk in front of the places of business of said defendants, or any or either of them, or the public sidewalk adjacent or contiguous thereto, as prayed for in plaintiff's complaint."

And the court further adjudged and decreed that an injunction writ issue as aforesaid, directed to the sheriff to execute and return in due form of law, upon complainants' filing a bond in the sum of $2,000, with surety to be approved by the court or the clerk (which bond was filed and approved).

In complainants' bill it is alleged in substance that they sue individually and jointly; that the suit involves a common question as to their respective rights; that by the bill it is sought to avoid a multiplicity of suits; and the defendants are sued as such, jointly and severally, because the charges against them involve the

same common questions of law and fact. The respective businesses of the eight complainants, all located in and fronting on South Halsted street, south of West Roosevelt road (or 12th street) and north of West 14th street in Chicago, are then set forth, including the nature, character and extent of each business.

In paragraph 9 of the bill it is alleged that Halsted street is one of the longest streets in Chicago, runs north and south, is one of the main arteries of travel in the city and has for many years enjoyed a reputation as a ''great shopping street for all kinds of goods and merchandise''; that Roosevelt road and 14th street are ''heavily travelled east and west streets, and are transfer points from many street car lines operated on Halsted street, Roosevelt road and 14th street''; that Halsted street, between Roosevelt road and 14th street, ''is a very busy shopping center,'' and the respective places of business of complainants and all defendants are located on Halsted street in that area or center; that the patronage of merchants within that area ''is not dependent on persons residing in the immediate vicinity of said businesses, but in a large measure the patronage of complainants and other merchants in said area comes from residents of all sections of the city and adjacent suburbs, attracted by reason of the transportation facilities available and the attractive values offered by the merchants in said area; and that these patrons and prospective customers must necessarily use the public sidewalks on Halsted street in said area in coming to or going from the respective places of business of complainants.''

In paragraph 11 it is alleged that there was and is in force and effect certain ordinances of the City of Chicago regulating the selling or soliciting of trade on public sidewalks, and defining the unlawful use of such sidewalks and prohibiting the attracting of attention or inviting patronage of any person to any business

whatsoever by any noise or crying or calling in audible manner on the streets; and that said ordinances were adopted prior to May 27, 1931, are designated as sections 1008, 1009 and 4194 of the Revised Municipal Code of 1931 of said City, and are as follows:

"1008. SELLING OR SOLICITING TRADE ON SIDEWALKS A NUISANCE. The practice of salesmen, clerks, agents and solicitors, while standing upon, using or occupying the public sidewalks, in selling or seeking to sell articles of merchandise to pedestrians or passersby, or in asking for or soliciting trade, custom or patronage of any pedestrian or passerby, for any business adjacent, adjoining, contiguous or near any public sidewalk, is hereby declared to be a nuisance, and the owner or proprietor of any such business who shall refuse or neglect to abate such nuisance after being notified in writing so to do by the commissioner of police, shall, on conviction thereof, forfeit and pay to the city a sum not less than $10, nor more than $200, for each and every day he shall refuse or neglect to remove or abate such nuisance.

"1009. UNLAWFUL USE OF SIDEWALKS. It shall be unlawful for any person to stand upon, use or occupy the public sidewalks for the purpose of or in pursuance of asking for or soliciting trade, custom or patronage for any person, firm or corporation which owns or conducts a business adjacent or near any such public sidewalk.

"It shall be unlawful for the owner or owners of any such business, either in person or by or through any salesman, clerk, agent or solicitor, to stand upon, use or occupy the public sidewalks to ask for or solicit trade, custom or patronage for such business.

"It shall be unlawful for any person, while soliciting trade, or attempting to solicit trade, custom or patronage for any such business, to interfere with or impede any pedestrian or passerby upon a public sidewalk.

"PROVIDED, nothing in this section contained shall be construed to include any business operated wholly or entirely upon the public-sidewalk space, under or by virtue of a lawful permit issued therefor.

"Any person, firm or corporation violating any of the provisions of this section shall be fined not less than one dollar nor more than $100 for each offense.

"4194. CALLING OF WARES AND USING MECHANICAL DEVICES FOR ADVERTISING GOODS PROHIBITED. No person shall make, or cause, permit or allow to be made, upon a public street, or in such close proximity to a public street as to be distinctly and loudly audible upon such public street, any noise of any kind by crying, calling or shouting, or by means of any whistle, rattle, bell, gong, clapper, hammer, drum, horn, hand organ, mechanically operated piano, other musical instrument, or similar mechanical device or wind instrument, for the purpose of advertising any goods, wares or merchandise or of attracting attention or inviting the patronage of any person to any business whatsoever; provided, that the said restrictions shall not apply to any public alley in the city between the hours of 11 a. m. and 6 p. m.

"Every person who shall violate any of the provisions of this section shall be fined not less than two dollars nor more than $50 for each offense; and such person shall be deemed guilty of a separate and distinct offense for every day during which such person shall continue such violation."

In paragraph 12 of the bill the names, kinds and places of the respective retail businesses of the 12 defendants are given. All are alleged to be in the block on Halsted street immediately south of Roosevelt road. And the respective kinds of retail businesses are alleged to be men's clothing, ladies' wearing apparel, men's or women's shoes, etc. And it is further alleged that none of the defendants operates a business wholly or entirely upon the sidewalk space, under or

by virtue of any lawful permit issued by the city authorities.

In paragraphs 13, 14 and 15 of the bill the allegations are as follows (italics ours):

"13.   That all of the defendants, so engaged in the businesses and at the addresses aforesaid, for some time past have had or do now have in their employ one or more persons, commonly called 'pullers,' engaged in behalf of their respective employers to indulge in the practice commonly called 'pulling,' which consists of soliciting trade or patronage on the public sidewalks in front of and adjacent to the places of business of their respective employers, by crying and calling out in a loud audible manner that their respective employers are offering rare bargains, or that a great sale is in progress, and other inducements of various descriptions, in an effort to induce pedestrians, *including customers and prospective customers of the respective complainants,* using said public sidewalks in said streets, to enter into the stores of their respective employers; that these employees use various methods and devices for making noises in an effort to attract the attention of said pedestrians, using said sidewalks on said streets, and where pedestrians are not impressed with said vocal efforts of said 'pullers,' they grab hold of the arm or otherwise take hold of such pedestrians in an effort to cajole or persuade them to enter the stores of their respective employers; that said 'pullers' are employed usually because of their glibness of tongue and lung power, and in some instances for their physical strength, better enabling them to take hold of and jostle pedestrians, resulting frequently in the pedestrians resenting interference with their free use of the public sidewalks, and for their resentment these pedestrians are frequently insulted in vile language by said 'pullers'; and that these practices are indulged in both with respect to men and

women pedestrians using said ,sidewalks on the streets in said neighborhood.

"14. That many of said pedestrians, using the sidewalks in front of and adjacent to the respective premises of defendants, are persons who have come into the neighborhood *for the purpose of trading with one or more of the complainants,* and others are persons desirous of trading with one or more of complainants or other merchants in the neighborhood; that they are entitled to the free and unmolested use of the public sidewalks; that defendants' acts and doings, by and through their said servants and employees, constitute a nuisance and are violative of the rights of the public in general *and particularly of the complainants;* that numerous customers and prospective customers and patrons of the respective establishments operated by complainants have complained of the unlawful practices of the respective defendants, and because thereof *have refused to come into said area* wherein are located the respective places of business of complainants, and have on account thereof refused and still do refuse to come into and purchase merchandise from the establishments respectively conducted by complainants, and on account thereof the respective complainants have *lost a large number of sales, business and profits* which would have accrued therefrom; that such acts of defendants cause and are causing *great and substantial damage to the property values and the property rights of complainants;* that the injury to complainants is different in kind and degree from that suffered by the general public, in that such unlawful practices by defendants *divert patronage* from the neighborhood in question and from the complainants in particular; that defendants' said acts are destructive of the property rights of complainants and cause them irreparable damage and injury; and

that such damage is incapable of computation and cannot be compensated for in an action at law.

"15. That said practices of defendants are indulged in *daily*, are *constant and continuous* and are occurring with such frequency that the prosecution of any of the defendants, and their servants and employees, for specific violations of said city ordinances would not afford adequate relief to complainants, and to undertake such prosecutions would occasion only a multiplicity of suits; and that defendants and each of them *threaten to continue* such unlawful acts, and a continuance thereof will result in substantial damage to the respective complainants and deprive them of profits that would otherwise accrue to them."

In paragraph 16 it is further alleged that complainants, together with "most of the merchants in said neighborhood," have exhausted all efforts of persuasion to induce the defendants to desist and stop their said practices; that they have sought relief by petitioning the commissioner of police of Chicago to abate the practices, declared by said ordinances to be a nuisance; that on March 22, 1934, a petition to that end was presented to said commissioner (photostatic copy of the petition is attached to the bill, marked "Exhibit A" and made a part thereof); but that despite complainants' protest and efforts to have defendants desist from their unlawful practices, the latter are still continuing to indulge in them. The petition is signed by a large number of merchants in said neighborhood (including some of the complainants), is addressed to said commissioner, is dated March 22, 1934, and is as follows:

"We, the undersigned, representing a majority of the business men of the Halsted-Roosevelt District in Chicago, hereby protest against the illegal and unethical practice of 'pulling' and 'street hawking' which has recently become prevalent in this district. We re-

spectfully direct your attention to sections 1008 and 1009 of the City Ordinances, which specifically prohibit this practice and instructs the Commissioner of Police in the manner of enforcement. Unless prompt and vigorous action is taken to suppress violations of these ordinances in this district, every self-respecting shopper will be driven away and the effect will prove ruinous to many business concerns of this section. We trust you will give this matter your immediate attention and use every means within your command to enforce the law and abolish this most serious nuisance completely and permanently from the district. Please be assured of our fullest co-operation in any request you may make.''

In the prayer of the bill complainants asked for the issuance by the court against defendants, their agents, employees, etc., of both a temporary and a permanent injunction, enjoining them from doing the acts and indulging in the practices, substantially as stated in the court's temporary injunction order in question as first above mentioned.

It is first contended by counsel for defendants that the court erred in issuing the temporary injunction because the bill does not allege sufficient facts showing violations of the three sections (above set forth) of the Revised Municipal Code of the City of Chicago. After reviewing the bill, and particularly paragraphs 13, 14 and 15 thereof, we find no merit in the contention. Furthermore, we are of the opinion that the bill states such facts as prima facie warrants relief by injunction against a private nuisance, being committed by defendants to the injury of complainants in their trade or business. In 46 Corpus Juris, pp. 646, 647, sec. 3, it is said: ''With respect to the scope of their injurious effect, nuisances are spoken of either as public or private or both. . . . A private nuisance is one that affects a single individual or a determinate

number of persons in the enjoyment of some private right not common to the public. . . . The distinction between public and private nuisances lies in the difference of the rights affected thereby. A nuisance is public because of the danger or injury to the public. It is private only because the individual as distinguished from the public has been or may be injured. . . . A public nuisance does not furnish grounds for an action either at law or in equity by an individual who suffers an injury which is common to the general public. But a nuisance may be both public and private at the same time if it, at the same time, affects the general public and also inflicts upon a private individual some special injury that is not inflicted upon the general public. An individual who sustains an injury peculiar to himself may have relief against a public nuisance." In *Wahle v. Reinbach,* 76 Ill. 322, 325, one of the well recognized doctrines in equity is stated to be that "where the injury resulting from the nuisance is, in its nature, irreparable, as, when loss of health, *loss of trade,* destruction of the means of subsistence, or permanent ruin to property will ensue from the wrongful act or erection, courts of equity will interfere by injunction, in furtherance of justice and the violated rights of property." (See, also, *Wente v. Commonwealth Fuel Co.,* 232 Ill. 526, 533.) And in 32 Corpus Juris, p. 155, sec. 209, it is said: "Since the right to carry on a lawful business without obstruction is a *property right,* acts committed without just cause or excuse, which interfere with the carrying on of complainant's business and destroy *his custom,* his credit, or *his profits,* do an irreparable injury and authorize the issuance of an injunction."

It is secondly contended by counsel that the court erred in issuing the temporary injunction because it appears from the face of the bill that complainants have an adequate remedy at law. We cannot agree

with the contention. Counsel do not state in their brief what particular remedy at law would be adequate. And we think it obvious from the allegations of the bill that prosecutions by the City of Chicago against the defendants, or some of them, for violations of the ordinances would not necessarily abate the nuisances, and that if they are not abated complainants will suffer irreparable injury. What is meant by the term "irreparable injury," authorizing the interposition of a court of equity by way of injunction, is stated in *Wahle v. Reinbach, supra,* where, quoting from Wood on Nuisances, it is said (76 Ill. p. 326): "By irreparable injury is not meant such injury as is beyond the possibility of repair, or beyond possible compensation in damages, nor necessarily great injury or great damage, but that species of injury, whether great or small, that ought not to be submitted to on the one hand or inflicted on the other; and because it is so large on the one hand or so small on the other, is of such constant and frequent recurrence, that no fair or reasonable redress can be had therefor in a court of law." In *Newell v. Sass,* 142 Ill. 104, 116, it is said that the term "irreparable injury," as used in the law of injunctions, "does not necessarily mean that the injury is beyond the possibility of compensation in damages, nor that it must be very great. And the fact that no actual damages can be proved, so that in an action at law the jury could award nominal damages only, often furnishes the very best of reason why a court of equity should interfere in a case where the nuisance is a continuous one." In *Christie Street Commission Co. v. Board of Trade,* 92 Ill. App. 604, 605, 606, it is said: "If the intervention of a court of equity be warranted by the necessity of protection to civil rights or property interests, then the mere fact that incidental thereto a crime or statutory offense must be enjoined, will not operate to deprive the court of its jurisdiction."

And in *Oehler v. Levy*, 234 Ill. 595, 602, it is said: "It has been repeatedly held by this court that where the legal right of a complainant in a bill for an injunction is clearly shown, and the unlawful use of the defendant's property which injured the complainant's property is clearly settled, the complainant will be granted relief without a prior determination in a suit at law that the defendant's use of his property constitutes a nuisance." And we think that the holdings and decision in *Donovan v. Pennsylvania Co.*, 199 U. S. 279, may here be referred to as being much in point. That litigation was commenced in the U. S. Circuit Court at Chicago by the Railroad Co. filing its bill to enjoin defendants from soliciting the custom, at the Railroad Co.'s station at Chicago, of incoming passengers for cabs, carriages, express wagons and hotels within said station and from congregating upon the sidewalks in front of, adjacent to, or about the entrances, and there soliciting such custom. A temporary injunction was granted (116 Fed. 907). On appeal to the U. S. Court of Appeals for the Seventh Circuit the temporary injunctional order was affirmed, as somewhat modified. (120 Fed. 215.) Subsequently a *final* decree was entered in the circuit court in conformity with said modification of the Circuit Court of Appeals, which decree was afterward affirmed by the latter court, and the cause reached the Supreme Court upon writ of certiorari sued out by the defendants (199 U. S. 285, 286), where said decree of the Court of Appeals also was affirmed (p. 305). From the statement of the case, preceding the opinion of the Supreme Court, it appears that the Railroad Co. had commenced the suit against defendants, who were hack drivers, etc., for the purpose of protecting it in the enjoyment of certain claimed rights and privileges in respect of its passenger station and depot grounds. That it was alleged in the bill (pp. 283, 284) that defendants "daily

gathered in numbers from 8 to 20 men at a time, in rows and groups, upon the sidewalk in front of its main entrance, entered the company's station at its main entrance by twos and threes at a time, without plaintiff's consent and against its express objection, and in loud and boisterous voices and manner solicited incoming passengers and baggage for their vehicles; that defendants by their numbers and noisy calls harassed and annoyed passengers, sometimes forcibly laying hold of them when leaving the station in order to secure their patronage, to the annoyance and confusion of passengers and to the injury and damage of plaintiff; that the number of defendants, upon the arrival of each train at the entrance and within the station, soliciting business, had become so great that, by their boisterous actions and obstruction of the sidewalk and the interior of plaintiff's station without its consent, they had in large part deprived plaintiff of its lawful property right in the street frontage and of the free and full use of its station and property, and thereby created and continued a private nuisance damaging to plaintiff's property, depriving it of the full, lawful, beneficial use of its station and street frontage and of the main entrance thereto and had prevented and now daily prevent it from securing to passengers a free and uninterrupted passage from and to its station and to arriving and departing trains; and that by such acts of defendants great and substantial damages were inflicted upon plaintiff's property different in kind and degree from that suffered by the general public, incapable of computation and which could not be compensated at law.

"That defendants have asserted the right—and acted upon that claim and assertion—to enter the station of plaintiff at all times in such numbers as suited their purposes, to remain there and occupy such portions of the station as they saw fit in soliciting the cus-

tom of incoming passengers regardless of the consent or regulations of plaintiff or the use to which its property is lawfully devoted, and to the prejudice of its duties and business as a common carrier, and by their actions have largely deprived plaintiff of the control of its property, to its irreparable loss and damage.''

It further appears that to the bill defendants filed an answer, putting in issue its material allegations, and insisting upon their legal right to have their vehicles in the public street in front of the company's station, and to go upon plaintiff's depot grounds or into its station as well as to stand upon the sidewalk in front of the main entrance to the station for the purpose of soliciting the business of incoming or outgoing passengers; and that the motion for the temporary injunction was heard upon the pleadings and upon affidavits filed by the respective parties. A portion of the opinion of the Supreme Court is as follows (pp. 304, 305):

''When, therefore, licensed hackmen and cabmen, at appropriate times, placed their vehicles in the public street, next to the sidewalk, in front of the company's passenger house, they did not violate the regulations established by the city council. Nor, so far as the plaintiff is concerned, did they violate such regulations, when, leaving their vehicles in the public street, at the appointed places, they stood near by them for a reasonable time upon the sidewalk awaiting the coming of passengers from the station house. What they could not legally do—what the final decree properly forbade them to do—was to *congregate* upon the sidewalk in front of, adjacent to or about the passenger house, *so as to interfere* with the ingress and egress of passengers. Of course, any use of the sidewalk in whatever way that would unnecessarily or unduly obstruct and interfere with passengers in their going or coming would be inconsistent with the rights of such

passengers, as well as an infringement of the right of the company as abutting property owner to have, by its agents and employes, for the purposes of its business, reasonable access to and from the sidewalk and the public street.

"It only remains to inquire as to the competency of a court of equity to give the railroad company the relief it sought. The defendants insist that equity cannot properly interfere. But the inadequacy of a legal remedy in such a case as this one is quite apparent. According to the record the attempt of the defendants, despite the objections of the company, to use its station house and depot grounds for the purpose of meeting passengers and soliciting their patronage, was of constant, daily, almost hourly occurrence. The case was one of a continuing trespass, involving injury of a permanent nature. A suit at law could only have determined the particular wrong occurring on a particular occasion, and would not reach other wrongs of like character that would occur almost every hour of each day, as passengers arrived at the station of the company. The same state of things existed in reference to such use of the sidewalk in front of the passenger station as unduly interfered with the rights of passengers arriving and departing. Only a court of equity was competent to meet such an unusual emergency, and by a comprehensive decree determine finally and once for all the entire controversy between the parties—thus avoiding a multiplicity of suits and conserving the public interests. No remedy at law would be so complete or efficacious as a suit in equity in such a case as this one."

It is lastly contended by counsel for defendants in the present case that the court erred in issuing the temporary injunction "for the reason that it appears from the bill that complainants could not have the relief as prayed." Their main argument in support of

the contention is that the bill "failed to aver *special damage* to complainants or their property, the character of which is different in kind and degree from that sustained by the general public." In developing their argument, after admitting that "persons dealing with complainants are entitled to the free and unmolested use of the sidewalks," they further state in their brief that "since the acts of defendants show no injury to the property, health or the personal convenience of complainants, but are rather charged to be a disturbance and annoyance to the exercise of a public right, it seems clear that the sole remedy is by a public prosecution; in brief, the use of public sidewalks, free from obstruction, is not a personal right, but is rather a privilege which one enjoys in common with every other person, and, while we may assume that the injuries to complainants are larger in measure from other business proprietors, yet the injuries to all are of the same general character." In view of the well pleaded allegations of fact contained in complainants' bill (which are to be taken as true upon this appeal) and considering numerous decisions of the courts of review in this State, we are unable to agree with the contention or arguments of counsel. As we read those allegations, the *gist* of them is that defendants' daily and continuous unlawful acts, as set forth in the bill, are specially injurious to complainants in their trade and business and in the established good will of their customers; i. e., in their property rights. In *McDonald v. English,* 85 Ill. 232, 236, it is said: "We regard the rule as well settled, that for any obstruction to streets, not resulting in special injury to the individual, the public, only, can complain. Where, however, the obstruction is such that a public prosecution is authorized, and, at the same time, an individual has been specially injured thereby, as well as where the act has been private and an offense against the individual,

solely, he may maintain an action and recover for his special injury. But, in such case, the special injury is the *gist* of the action, and, unless it is alleged and proved, there can be no recovery.'' And in *Hoyt v. McLaughlin,* 250 Ill. 442, 446–448, it is said (italics ours):

''An unlicensed dram-shop or saloon is declared by law to be a nuisance. . . . Can such a nuisance be abated at the suit of a private person? The answer to this question depends upon whether an individual has suffered *special damage different from that suffered by him in common with the public.* The rule is well settled by the decisions of this and other States that a public nuisance will not be enjoined at the suit of a private person unless the nuisance causes such person a special and particular injury distinct from that suffered by him in common with the public at large. In cases where no private or special injury is caused to an individual an action to abate the nuisance must be instituted by or in the name of the public. *But a public nuisance may also be a private nuisance.* (Wood on Nuisances, sec. 674,) as where the property of an individual is injured in a manner special to him and different from the injury to the public. An injury to the public, in the sense here used, is such an injury as excludes or hinders all alike in the enjoyment of a common right. The question whether a private person has suffered such special injury or damage is not to be determined by whether he, alone, has suffered damage or whether others in the same vicinity have been injured also. If an individual has suffered special damage to his property from the nuisance, his right to maintain a bill to enjoin it is not affected by the fact that the property of others has been injured by the same cause. (*Wylie v. Elwood,* 134 Ill. 281, 286.) This question has been the subject of frequent adjudication, and, according to the great weight of authority, if the

allegations of the bill here make a case against appellees of conducting a dram-shop without a license, the special damage alleged is sufficient to authorize maintaining the bill. In *Wesson v. Washburn Iron Co.,* 95 Mass. 95, the court said (p. 103): 'The real distinction would seem to be this: That when the wrongful act is, of itself, a disturbance or obstruction only to the exercise of a common and public right, the sole remedy is by public prosecution, unless special damage is caused to individuals. In such case the act of itself does no wrong to individuals distinct from that done to the whole community. But when the alleged nuisance would constitute a private wrong by injuring property or health or creating personal inconvenience and annoyance for which an action might be maintained in favor of a person injured, *it is none the less actionable* because the wrong is committed in a manner and under circumstances which would render the guilty party liable to indictment for a common nuisance.' ''

Counsel for defendants, in arguing their instant contention, lay considerable stress upon the holdings and decision in *Pittsburg, Ft. W. & C. Ry. Co. v. Cheevers,* 149 Ill. 430, wherein our Supreme Court, adopting the opinion of the Appellate Court for the First District (44 Ill. App. 118), affirmed the judgment of that court, which in turn had affirmed a final decree of the circuit court of Cook county, dismissing for want of equity the Railroad Co.'s bill for an injunction, somewhat similar to that finally sustained by the decision of the United States Supreme Court in the subsequent *Donovan* case, *supra* (199 U. S. 279). We have carefully considered the facts in the *Cheevers* case (as disclosed from the opinion) and believe they are to be distinguished from those alleged in complainants' bill in the present case.

Our conclusion is that in the present case the circuit court did not err in entering its interlocutory order appealed from of July 13, 1934, granting the temporary injunction against defendants as first above mentioned. Accordingly, the order is affirmed.

*Affirmed.*

SCANLAN and SULLIVAN, JJ., concur.