THE PEOPLE *ex rel.* HANRAHAN *et al.*, Plaintiffs-Appellees, *v.* La SALLE NATIONAL BANK, Trustee, *et al.*, Defendants-Appellants.

First District (3rd Division)   No. 60831

Opinion filed May 6, 1976.

Howard T. Savage and Patricia Unsinn, both of Chicago, for appellants.

William R. Quinlan, Corporation Counsel, of Chicago (Daniel Pascale and Jerome A. Siegan, Assistant Corporation Counsel, of counsel), for appellees.

Mr. JUSTICE DEMPSEY delivered the opinion of the court:

A permanent injunction was entered against Vincent Geraci and John Ash on December 12, 1972, following the court's finding that they were operating unlicensed massage parlors at 5550-52 North Broadway and 701 North Wells in Chicago in a manner that constituted a public nuisance. Specifically, the court found that the defendants permitted their female employees to massage nude male patrons and the genital organs of male patrons. The defendants were enjoined from maintaining any such public nuisance at the named addresses and from maintaining any such public nuisance within the jurisdiction of the court.

In June 1974 a petition, filed pursuant to section 7 of the Public Nuisances Act (Ill. Rev. Stat. 1973, ch. 100½, par. 7), charged Geraci with violating the injunction by operating a public nuisance known as the "Haven" at 2913 North Clark Street, Chicago—a manicure parlor where nude or half-nude women in individual private cubicles provided manicures, shoeshines and sex consultations for their male patrons.

According to the evidence at the hearing, the particular incident giving rise to the petition was this: On February 4, 1974, an undercover Chicago policeman entered the Haven and asked for a manicure. He was told by the manager that he could have a completely nude manicurist or one nude from the waist up. He decided on a topless one, paid the manager six dollars and picked out a girl from the photographs shown to him at the front desk. The officer waited a few minutes until the girl was unoccupied and the two of them then entered a cubicle about five feet long and eight feet wide containing a reclining chair, a small stool and a small table with manicuring articles on it. After she shut the door, she asked him to sit down and make himself comfortable. She stripped to the waist and told him he could touch her from the waist up. The officer asked her if she would perform a "blow job"; she said that she was not allowed to do this. He showed her ten dollars in his wallet and told her that he would pay for her services. She repeated that he should make himself comfortable and told him to take his pants and underwear off. After he partially undressed and lay back on the reclining chair as requested, she placed her hand on his genitals and manipulated them. He told her that he was a policeman and placed her and everyone else in the parlor under arrest. After the raid was over Geraci arrived. He was questioned by the police but was permitted to remain and lock up the premises after his employees and customers had been taken away in patrol wagons.

Geraci testified that he owned and operated the "Haven," but he denied any wrongdoing. He said he had instructed his female employees to perform only manicuring and shoeshining services; to touch customers only when necessary to perform these services; never to discuss or accept money while in a cubicle; never to engage in or promise to engage in any sexual act with a customer and to always lock the door when in a cubicle with a customer. He said he told all his employees that they would be fired if they performed or agreed to perform any sexual act. He testified that he had no knowledge of the conduct described by the police officer, and the girl had denied it when questioned. He had not discharged her.

The trial judge believed the officer and found that Geraci had willfully and contumaciously violated the injunction of December 12, 1972. He was adjudged guilty of contempt and sentenced to the Cook County Jail for three months.

The defendant contends that his conviction should be reversed for four reasons: first, that the court did not specifically enjoin the operation of an establishment where a female employee massaged the genitals of male customers; second, that the court entered the injunction pursuant to the Public Nuisances Act (Ill. Rev. Stat., 1971, ch. 110½, par. 1 *et seq.*), but that the Act allows a court to enjoin only the operation of houses of prostitution, and since there is no statute which empowers a court to enjoin the operation of an establishment where masturbatory massages are given, the injunctional order was void and contempt will not lie for violation of a void order; third, that the Act's prohibition of places used for "lewdness, assignation, or prostitution" (particularly "lewdness") is unconstitutionally vague so that any order enjoining activity under this classification would be void for vagueness, and, fourth, that the evidence did not prove him guilty beyond a reasonable doubt.

■■ The defendant's first point has absolutely no merit. The permanent injunction specifically and unambiguously stated that the defendants Geraci and Ash were "permitting their female employees to massage the genitals of persons of the opposite sex." The court concluded that operation of massage parlors where this activity occurred constituted a "public nuisance" and enjoined the defendants "from maintaining any such public nuisance" within Cook County. The words "from maintaining any such public nuisance" referred to any establishment, whether it was called a massage parlor or a manicure parlor, where "such activity—*i.e.*, masturbatory activity—was permitted.

■■ There is no need for this court to consider points two and three. The defendant did not move within 30 days after the entry of the injunction to have the trial court reconsider or modify its order as he was entitled to do under section 68.3 of the Civil Practice Act (Ill. Rev. Stat. 1971, ch. 110, par. 68.3). Nor did he appeal from the order within 30 days as permitted under Rule 303(a) (Ill. Rev. Stat. 1971, ch. 110A, par. 303(a)). It was not until September 26, 1974, that the defendant moved to have the court dissolve (or, in the alternative, modify) the injunction entered against him nearly two years before. A similar situation prevailed in *People v. Mulgrew* (1974), 19 Ill. App. 3d 327, 311 N.E.2d 378, where the defendant in a contempt proceeding sought to attack the terms of the injunction on constitutional and nonconstitutional grounds. The court noted in language pertinent here that the permanent injunction

"*\* \* \** was a final and appealable order, since except for its enforcement it adjudicated the outstanding issues raised by the pleadings and disposed of the litigation between the parties. [Citation.] No post-trial motions having been filed, defendant's failure to appeal from the decree granting the permanent

injunction within the 30-day period following its entry prevents us from a review of the procedural and substantive aspects of the decree." 19 Ill. App. 3d 327, 330-31.

The only remaining issue is whether the defendant was properly found guilty of contempt. He argues that he was not proved ·guilty beyond a reasonable doubt and that this was the standard of proof required because he was charged and sentenced for criminal, not civil, contempt.

■■ Much space is taken in both the defendant's and the City's brief arguing the difference between criminal and civil contempt and whether the instant proceeding was the one or the other. The discussion is academic because the officer's testimony, if accepted by the trial court, established the defendant's guilt beyond a reasonable doubt, notwithstanding his denial. The permanent injunction specifically prohibited Geraci and his codefendant from operating any establishment "permitting their female employees to massage the genitals of persons of the opposite sex." The trial judge believed the officer's testimony and concluded that the masseuse began to massage the officer's penis for a price. There is no reason to reject this finding. In nonjury contempt proceedings the trial judge must determine the credibility of the witnesses and the weight their testimony should be given. There is nothing. unreasonable in the court's conclusion that Geraci willfully violated the injunction. To be sure, Geraci testified that he told his employees never to engage in sexual activities while on the job or promise to do so. But the credibility of this testimony was undercut by his own admission that he instructed his female employees to lock the doors when they were in the cubicles with their customers.

The judgment is affirmed.

Judgment affirmed.

McNAMARA and McGLOON, JJ., concur.