THE CITY OF CHICAGO, Plaintiff-Appellee, *v.* SALVATORE CECOLA, a/k/a SAM CECOLA, *et al.*, Defendants-Appellants.

First District (4th Division)    No. 61648

Opinion filed December 22, 1977.—Rehearing denied January 19, 1978.

Patrick A. Tuite and George C. Pontikes, both of Chicago, for appellants.

William R. Quinlan, Corporation Counsel, of Chicago (Daniel Pascale and Lois Feinberg, Assistant Corporation Counsel, of counsel), for appellee.

Mr. JUSTICE JOHNSON delivered the opinion of the court:

Defendants, Salvatore Cecola, Juan Cruz, John Spadeas, Jeffrey C. Weiss, and Norman McCray, doing business as the Harem Leisure Spa,

their agents and employees, and other unknown owners, appeal from the entry of a permanent injunction which found that because illegal, lewd, and blatantly sexual genital stimulation was occurring at the Harem Leisure Spa, the spa was a public nuisance. The defendants were perpetually enjoined from operating their business at 839 North LaSalle, Chicago, Illinois, their business address. The trial court granted a stay on its order, pending this appeal.

The issues presented for review are (1) whether the Harem Leisure Spa was a public nuisance and (2) did the city allege an inadequate remedy at law to entitle it to equitable relief.

On February 20, 1975, the City of Chicago filed a complaint against the defendants, alleging that the defendants provided blatantly sexual genital stimulation at the Harem Leisure Spa, located at 839 North LaSalle, Chicago, Illinois. The complaint further alleged that on six separate dates arrests were made at the spa for violations of section 11—14(a)(2) of the Criminal Code of 1961 (Ill. Rev. Stat. 1973, ch. 38, par. 11—14(a)(2)) and section 192—1 of the Municipal Code of Chicago (Chicago, Ill., Mun. Code, ch. 192, par. 1). Specific incidents of sexual genital stimulation were set forth in the complaint as follows: (1) That on September 3, 1974, a female employee at the spa agreed to engage in oral copulation with an undercover police officer for $45 and (2) that on September 9, October 25, December 1, December 7, and December 15, 1974, a female employee fondled undercover police officers' genitals for $15 on each occasion. It was further alleged that the described conduct was deleterious and a menace to the health, safety or general welfare of the community, and constitututed a public nuisance. Finally, the city asserted that it had no adequate remedy at law as the numerous arrests had no effect in eliminating the illegal activity.

The defendants filed an answer contending that sexual genital stimulation provided at the spa was permitted by law and denied that the arrests were valid or proper. The defendants further denied that the conduct was a nuisance, that such conduct was causing irreparable injury to the citizens and residents of the city of Chicago, and that the city had an adequate remedy at law.

The defendants asserted four affirmative defenses: (1) That the Municipal Code of Chicago regarding public nuisances (Chicago, Ill. Mun. Code, ch. 192, par. 1) violates the due process clause of the fourteenth amendment to the United States Constitution and the due process clause of the Illinois Constitution, article I, section 2, insofar as the ordinance is so vague that a reasonable person could not be expected to conform his conduct to the requirements of the law; (2) because the plaintiff failed to inform the circuit court of the pendency of a Federal case challenging the constitutionality of the ordinance, plaintiff came into

court without clean hands; (3) that the activity on the spa premises was permitted by law and could not be the basis for a determination that the business of the spa was a public nuisance and (4) because the city took 6 months from the opening of defendants' business before filing its complaint, plaintiff is guilty of laches.

The parties stipulated that there was one act of prostitution on the premises for which a female employee was convicted, and that on the dates alleged in the complaint female employees of the spa did fondle and stroke the genitals of members of the Chicago Police Department in private cubicles for money. No testimony was received that any person outside the premises was affected or annoyed by the activities conducted at the spa.

The trial court found the sexual activities at the Harem Leisure Spa to be a public nuisance and enjoined the defendants from operating the business where illegal, lewd, and blatantly sexual genital stimulation was occurring. This appeal followed.

Defendants contend that since no testimony was received into evidence showing that anyone outside the premises was affected or annoyed by the conduct inside the spa, the city has failed to establish that a public nuisance in fact existed. They further assert that there is no statute in Illinois nor an ordinance in the city of Chicago which declares that a place where manual fondling of genitals occurs is a nuisance. By their assertions, defendants intimate that section 192—1 of the Municipal Code of the City of Chicago (Chicago, Ill., Mun. Code, ch. 192, par. 1) and section 1 of the Illinois public nuisances act (Ill. Rev. Stat. 1973, ch. 100½, par. 1) are so vague that both violate the due process clauses of the United States and Illinois constitutions.

The city argues that the trial court properly used its discretion in determining that there was sufficient evidence to find the Harem Leisure Spa was a public nuisance, as the activity occurring therein was deleterious to the health, safety, morals, or general welfare of the community. It further asserts that *City of Chicago v. Geraci* (1975), 30 Ill. App. 3d 699, 332 N.E.2d 487 is controlling.

■■ Nuisances are classified as either public or private. A nuisance is public when it is dangerous or injurious to the general public; a private nuisance is one that affects a single individual or a determinate number of persons in the enjoyment of some private right not common to the public. (*People ex rel. Carey v. Route 53 Drive-In* (1976), 45 Ill. App. 3d 81, 84, 358 N.E.2d 1298, 1300; *Edelman Bros., Inc. v. Baikoff* (1934), 277 Ill. App. 432, 441-42.) Public nuisances may be classified as nuisances per se and nuisances in fact. Nuisances per se are those activities which are inherently nuisances under any circumstances, and nuisances in fact are

those activities which although not inherently nuisances, become so due to the manner in which they are carried out. (See *City of Pana v. Central Washed Coal Co.* (1913), 260 Ill. 111, 102 N.E. 992; *Symposium: The Law of Nuisances in Illinois*, 43 Chi.-Kent L. Rev. 173, 182 (1966); 58 Am. Jur. 2d *Nuisances* §§12, 13 (1971).) Generally, no act, erection, or use of property which is lawful or authorized by competent authority can be a nuisance per se, nor is property which may be and ordinarily is used for a lawful purpose a nuisance per se. (58 Am. Jur. 2d *Nuisances* §13 (1971).) Finally, it appears that public nuisances per se are defined either by common law or by legislative enactment. Compare *People ex rel. Dyer v. Clark* (1915), 268 Ill. 156, 108 N.E. 994, with *People v. Goldman* (1972), 7 Ill. App. 3d 253, 287 N.E.2d 177.

In order to determine whether the Harem Leisure Spa is a public nuisance, we must resolve two questions: (1) Has the City Council enacted an ordinance declaring masturbatory massage parlors a public nuisance, and, if so, will such ordinance withstand constitutional attack, and (2) were masturbatory massage parlors public nuisances at common law? Before resolving these questions, it should be noted that in *City of Chicago v. Geraci* (1975), 30 Ill. App. 3d 699, 704, 332 N.E.2d 487, 492, the Illinois Appellate Court, First District, held that the Illinois public nuisances act (Ill. Rev. Stat. 1973, ch. 100½, par. 1) and section 192—1 of the Municipal Code of Chicago were applicable to masturbatory massage parlors. Although there was some discussion about the vagueness of the words employed in the statute and ordinance, it is not clear from the text of the case whether the defendants attacked these laws as being unconstitutional or whether the court sufficiently resolved the question of the constitutionality of the statute and ordinance. Next, it should be noted that the Illinois public nuisances act was attacked on constitutional grounds in *People ex rel. Hanrahan v. La Salle National Bank* (1976), 38 Ill. App. 3d 461, 348 N.E.2d 220, but the issue was not resolved because the appellants in that case failed to appeal the order granting the permanent injunction. Because question one above has not been resolved, we will attempt to do so now. See *Jamaica Inn, Inc. v. Daley* (1977), 53 Ill. App. 3d 257, 264, 368 N.E.2d 589, 594.

Because this action was brought pursuant to section 192—1 of the Municipal Code of Chicago, we will direct our attention to this section and not to the Illinois public nuisances act. Section 192—1 of the Municipal Code of Chicago provides:

> "Every house of ill-fame or house of assignation where men and women resort for the purpose of fornication, prostitution or lewdness is hereby declared a nuisance."

Pursuant to section 192—19 of the Municipal Code of Chicago (Chicago,

Ill., Mun. Code, ch. 192, par. 19), a mandatory fine of $5 to $200 should have been imposed in this case when the trial court found that the defendants had violated a provision of chapter 192 of the Municipal Code of Chicago. Even though no fine was imposed by the trial court, this fact is not critical in determining the nature of the proceedings below and the categorization of the ordinance. While a number of authorities in this State say that an action to recover for the violation of a municipal ordinance is a civil proceeding, it is more accurate to say that it is quasi-criminal. (*Village of Maywood v. Houston* (1956), 10 Ill. 2d 117, 119, 139 N.E.2d 233, 234; *City of Chicago v. Wernecke* (1940), 306 Ill. App. 514, 517, 29 N.E.2d 301, 302.) Therefore, section 192—1 of the Municipal Code of Chicago is more accurately classified as a quasi-criminal ordinance. It is important to know what type of ordinance is in question before attempting to interpret the ordinance.

■■ The defendants have intimated that the words "lewdness and prostitution" are so vague that they fail to give reasonable men notice of what conduct is prohibited and therefore violate the due process clauses of the United States and Illinois constitutions.

> "It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined. Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning." (*Grayned v. City of Rockford* (1972), 408 U.S. 104, 108, 33 L. Ed. 2d 222, 227, 92 S. Ct. 2294, 2298-99.)

Upon initial inspection, the word "lewdness" appears to be vague and indefinite. In *Miami Health Studios, Inc. v. City of Miami Beach* (S.D. Fla. 1972), 353 F. Supp. 593, the court found that a similar statute prohibiting the maintenance or operation of any place for the purpose of lewdness, assignation, or prostitution was constitutionally infirm as the language employed was too vague and indefinite, and failed to inform reasonable men as to what conduct was prohibited. However, in *People v. Goldman* (1972), 7 Ill. App. 3d 253, 287 N.E.2d 177, the Illinois appellate court observed that lewdness as used in the Illinois public nuisances act, which is quite similar to section 192—1 of the Municipal Code of Chicago, was in the disjunctive seriatim with the words "prostitution and assignation," so that its meaning must be determined by looking to the words with which it is associated. The court concluded that the legislature must have intended "lewdness" to be interpreted as being synonymous with "prostitution," and therefore held that the statute was

not too vague. (*Accord, City of Chicago v. Geraci* (1975), 30 Ill. App. 3d 699, 332 N.E.2d 487.) In *Geraci*, the court adopted the same interpretation with respect to section 192—1 of the Municipal Code of Chicago. We agree with this interpretation.

The word "prostitution" is vague and ambiguous because it is not clear whether City Council intended to adopt the meaning of "prostitution" found in the Criminal Code of 1961 (Ill. Rev. Stat. 1973, ch. 38, par. 11—14) or whether it intended to adopt the plain dictionary meaning. In *Geraci*, the court determined that City Council did not intend to limit the meaning of the word "prostitution" to the definition contained in the Criminal Code; however, the ordinance was not challenged as being constitutionally infirm.

■■ In interpreting the meaning of a word, it is of utmost importance to determine what the legislature intended that word to mean. When the intent cannot be ascertained from the provision itself, we must resort to aids of construction. An ambiguous statute or ordinance must be construed, if possible, to avoid the ambiguity. (*People v. Ashford* (1974), 17 Ill. App. 3d 592, 598, 308 N.E.2d 271, 276.) Where the language of a statute is ambiguous or uncertain, the construction placed on it by contemporaries may be resorted to as an aid in ascertaining the legislative intent. (34 Ill. L. & Prac. *Statutes* § 127 (1958).) Some contemporaries have interpreted the word "prostitution" as employed in the Illinois public nuisances act to be controlled by the definition found in the Criminal Code (Ill. Rev. Stat. 1973, ch. 38, par. 11—14) (*People v. Goldman* (1972), 7 Ill. App. 3d 253, 287 N.E.2d 177 (dissenting opinion); *Symposium: The Law of Nuisances in Illinois*, 43 Ch.-Kent L. Rev. 173, 183 n. 15 (1966)), but others have suggested that this definition is not controlling. (*City of Chicago v. Geraci* (1975), 30 Ill. App. 3d 699, 332 N.E.2d 487.) The contemporaneous rule offers little assistance in determining what the City Council intended.

■■ ■ When a statute or ordinance employs words having a well-known legal signification, courts will, in the absence of any expression to the contrary, assume the legislature intended the words to have that meaning. (*Department of Public Works & Buildings v. Wishnevsky* (1972), 51 Ill. 2d 550, 552, 283 N.E.2d 872, 874.) In the State of Illinois, "prostitution" has a well-known legal signification, the definition contained in the Criminal Code (Ill. Rev. Stat. 1973, ch. 38, par. 11—14), which excludes masturbation from its definition. Apparently, the City Council intended the word "prostitution" to have that meaning, as it has indicated no contrary intention.

■■ ■ Besides this rule of construction, when a statute or ordinance is both remedial and penal, as in the instant case, it should be construed with

at least a reasonable degree of strictness as to not include anything beyond the immediate scope and object, even though it be within its spirit. (*Acme Fireworks Corp. v. Bibb* (1955), 6 Ill. 2d 112, 119, 126 N.E.2d 688, 692; *Cedar Park Cemetery Association, Inc. v. Cooper* (1951), 408 Ill. 79, 83, 96 N.E.2d 482, 484.) Moreover, ordinances should be construed in a manner which will prevent their running counter to constitutional provisions. (*Douglas v. Village of Melrose Park* (1945), 389 Ill. 98, 101, 58 N.E.2d 864, 865.) If a narrow interpretation of an ordinance will preserve its constitutionality and protect the rights of the defendants, then such interpretation should be adopted. *United States v. Harriss* (1954), 347 U.S. 612, 623, 98 L. Ed. 989, 999, 74 S. Ct. 808, 815.

We are compelled to construe the ordinance with a reasonable degree of strictness in order to protect the rights of the defendants and sustain the constitutionality of the ordinance. A stricter interpretation of the word "prostitution" compels us to adopt the narrower definition of "prostitution" which is contained in the Criminal Code (Ill. Rev. Stat. 1973, ch. 38, par. 11—14). This definition excludes masturbation from its meaning. As noted earlier, we also think that the City Council intended to adopt this definition, as "prostitution" has a well-known legal signification in Illinois. As it stands, there is no city ordinance which defines masturbatory massage parlors as a public nuisance per se. Also, masturbatory massage parlors did not exist at common law and, therefore, we can conclude that the common law did not define masturbatory massage parlors as public nuisances per se.

■■ Next, we must determine if the city proved that the Harem Leisure Spa was a public nuisance in fact. The city failed to show how legal activities carried on in private cubicles endangered or injured the public. No evidence was introduced concerning the effect on area residences, and no evidence was introduced to show that the manner in which the massage parlor was operated injured the public. In short, the city failed to prove that the spa was a public nuisance in fact. Since neither common law nor City Council enactment has defined masturbatory massage parlors as public nuisances per se, and since the city failed to prove that the spa was a public nuisance in fact, the trial court committed error when it permanently enjoined the defendants from operating the Harem Leisure Spa. See *People ex rel. Dyer v. Clark* (1915), 268 Ill. 156, 108 N.E. 994; *People v. Goldman* (1972), 7 Ill. App. 3d 253, 287 N.E.2d 177; *People ex rel. Carey v. Route 53 Drive-In* (1976), 45 Ill. App. 3d 81, 358 N.E.2d 1298.

Regarding the second issue, the defendants assert that the city's complaint did not allege an inadequate remedy at law. Inasmuch as this case is reversed for the foregoing reasons, we need not reach the second issue raised by the defendants.

For the foregoing reasons, the judgment of the circuit court of Cook County is reversed.

Reversed.

DIERINGER, P. J.,* and ROMITI, J.,* concur.

---

* Justices Thaddeus V. Adesko and Henry L. Burman had been assigned to this case and heard the oral argument, but have since retired, and this court has appointed Justices Philip Romiti and Henry W. Dieringer to replace them. Both sides have agreed that additional oral argument will not be necessary. Justices Romiti and Dieringer have read the briefs, heard the oral argument on tape, and concur in this opinion.