[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON DEFENDANT'S MOTION TO CORRECTAND OBJECTION TO ACCEPTANCE OF REPORT
In this case, plaintiff Shirley Guze has sued defendant Kenneth Warner, III for breach of contract and violation of the Connecticut Unfair Trade Practices Act ("CUTPA"), C.G.S. § 42-110b, in connection with certain home improvement work he performed under contract at her Avon, Connecticut home between July 17 and September 7, 1990. In the First Count of her Amended Complaint ("Complaint"), the plaintiff claims that the defendant breached his contract by performing the agreed-upon work in an unskillful, negligent and unworkmanlike manner. As a result of the defendant's allegedly deficient performance of his contractual obligations, the plaintiff claims that she suffered losses for which she is now entitled to recover money damages plus attorney's fees under C.G.S. § 42-150aa.
In the Third Count of her Complaint,[1] the plaintiff claims that the defendant violated CUTPA in four different ways: by representing to the plaintiff that he was an experienced and professional interior painter and wallpaper hanger who performed his work in a manner superior to most CT Page 3140 such contractors, when in fact he was not; by engaging in the home improvement business in the relevant time period without a current certificate of registration, in violation of C.G.S. § 20-420a(a); by conducting his business during that period under an unregistered trade name, in violation of C.G.S. § 35-1; and by drafting the contract in question without using "plain language." As a result of these alleged violations, the plaintiff seeks to recover money damages, punitive damages under C.G.S. § 42-110g(a), and attorney's fees and costs under C.G.S. § 42-110g(d).
In his Answer to the plaintiff's complaint, the defendant has admitted that he did indeed perform home improvement work on the plaintiff's house under the terms of a written home improvement contract and that the plaintiff did all that was required of her under that contract. He has denied, however, all of the plaintiff's other allegations against him, and has pleaded the following as a special defense: that the contract in question contained a warranty; that the warranty was exclusive of all other warranties, express or implied; that the contract also contained a limitation-of-liability clause, which provided that the defendant would not be liable for any indirect, incidental or consequential damages resulting from any negligence, breach of warranty or defective workmanship on his part; that the limitation-of-liability clause limited the plaintiff's remedy for defective performance to the repair or reexecution, free of charge, of any work which did not conform to the drawings or specifications for the job; that the limitation-of-liability clause further provided that all warranty obligation from the defendant to the plaintiff was conditioned upon the defendant's receipt of notice in writing of any claimed defect within twelve (12) months from the date the work was performed; that in this case, the defendant did not receive written notice of any claimed defect within twelve months from the date the work was performed; and that the plaintiff's losses resulted either from her failure to give such timely notice of the defects or from faulty material which the plaintiff herself provided for the job.
The plaintiff has replied to the defendant's special defense that the defendant cannot enforce the twelve-month notice provision of the subject contract because at the time the defendant entered into and performed work under that contract, he was not a registered home improvement contractor. This defense is explicitly based on that part of C.G.S. § 20-429(a) CT Page 3141 which provides that, "No home improvement contract shall be valid or enforceable against an owner unless it: . . . (8) is entered into by a registered salesman or registered contractor." In addition, she has replied that she was not responsible for her own damages due to any delay in notifying defendant of the defects in his work because such delay resulted from the fact that much of the damage was not readily detectable by her. Finally, the plaintiff has pleaded that the materials she gave the defendant to complete the job were of high quality, having been purchased from a reputable dealer.
On or about February 7, 1994, this case was set down for a trial before a factfinder, Attorney State Trial Referee Irving B. Shurberg. After conducting the trial on or about April 15, 1994, the Referee submitted his Report on June 21, 1994.
In his Report, the Referee made the following pertinent findings of fact and conclusions of law: On July 17, 1990, the plaintiff and the defendant entered into a signed, written home improvement contract under which the defendant was to perform certain painting and paper hanging work in the plaintiff's Avon home. Report, ¶ 1. The contract provided that the defendant would be paid at an hourly rate of $35.00 per person for the entire work. Id. It also provided that the plaintiff was to supply all materials to complete the job.Id.
The reverse side of the contract contained twenty paragraphs of terms and conditions which were incorporated into the contract. Id., ¶ 2. Among them was paragraph 11, which provided that the warranty obligation of the defendant was "conditioned upon [the defendant] receiving notice in writing of any claimed defect within twelve months from the date the work was performed." Report, ¶ 3.
The defendant completed the work called for in the contract and was paid in full for his work pursuant to time sheets he submitted to the plaintiff. Id., ¶ 5. In total, the plaintiff paid the defendant $3,850 for labor performed under the contract and $404 for materials he provided for the job. Id., ¶ 8. In addition, the plaintiff paid $1,804.26 to others for paint and wallpaper which she supplied to the defendant to complete the job. Id.
CT Page 3142
When the parties entered into their contract and the defendant performed his work thereunder, the defendant did not have a current certificate of registration issued under C.G.S. § 20-422. Id., ¶ 4. Furthermore, though he then was doing business in the Town of Canton under the trade name of "Interiors Complete," he did not file a trade name certificate with the Canton Town Clerk until at least September 10, 1992, over two years after all work on this job was completed. Id.,
¶ 14.
A few months after the defendant finished the job, the plaintiff began to notice defects in the work, including that paint was chipping throughout the house and that the wallpaper was mismatched and peeling. After unsuccessfully attempting on several occasions to reach the defendant by telephone, she finally contacted him on July 22, 1992 by having her attorney send him a letter. Id., ¶ 7.
From the testimony and other evidence presented at trial, the Referee concluded that "the work done by the defendant was indeed defective." Id., p. 4. The problems caused by such defective work included "[t]he presence of paint on the metal door hinges, dripped paint of (sic) the fireplace hearth, splattered paint on windows, paint on the plastic side jams (sic) of the sliding windows, mismatched and peeling wallpaper and paint chipping through out (sic) [the house] . . . ." Id.
The cost of repairing this defective work, as estimated by the plaintiff's expert witness, Mr. Glen Morneau, was $3,780.Id., ¶¶ 10, 13.
As for the defendant's special defense that the plaintiff's failure to notify him of her claims within twelve months of the work in question should deny her recovery under the express terms of their contract, the Referee agreed with the plaintiff that that claim was legally unavailable to the defendant under C.G.S. § 20-429(a)(8) because, at the time he entered into the contract and did the work, he was not a registered home improvement contractor. Report, pp. 4-5. As for the defendant's fallback argument — that since the plaintiff herself had relied upon the contract in asserting her breach-of-contract claim, she was bound by the entire contract, including its limitation-of-liability clause — the Referee also disagreed. In so doing, he concluded from Connecticut case law — including, especially, Sidney v.CT Page 3143DeVries, 8 Conn. App. 581 (1989); 215 Conn. 350 (1990) — "that homeowners who have suffered a breach of contract by a home improvement contractor under an unenforceable contract may recover damages for breach of contract." Report, p. 5.
In light of the foregoing findings and conclusions, the Referee recommended that judgment enter for the plaintiff in the amount of $3780 plus a reasonable attorney's fee, the amount of which was to be determined after application and hearing.
On July 1, 1994, the defendant filed a motion to correct the Referee's Report, together with a statement of the grounds therefor. Upon hearing that motion, the Referee corrected his Report to include the following additional findings of fact: that at the end of each week's work on the job, the defendant presented the plaintiff a bill; that each such bill contained the language of the twelve-month notification provision in paragraph 11 of the parties' contract; and that the plaintiff duly paid the defendant at the end of each week's work on the project — that is, on August 24, August 30 and September 7, 1990. The remainder of the defendant's requests for additions or corrections were denied in the Trial Referee's Ruling on Defendant's Motion to Correct, which was filed on October 31, 1994.
The defendant thereafter filed with this Court, under Section 439 of the Connecticut Practice Book, a document entitled, "Exceptions and Motion to Correct." By this submission, the defendant asked this Court to "correct" the Referee's Report in five specific ways.[2]
On that same day, the defendant filed a formal written objection to the Referee's corrected Report under Section 440 of the Connecticut Practice Book. In that separate submission, the defendant challenged the Referee's "refus[al] to find that the plaintiff was barred from her claim because she failed to notify defendant within one year of the claimed defects in workmanship and failed to find that Plaintiff consented to the quality of workmanship." Id. For the following reasons, the Court hereby denies the defendant's motion to correct, overrules the defendant's objection to the acceptance of the Referee's Report, as corrected by the Referee, and orders both that the corrected Report be accepted and that judgment for the plaintiff be entered in accordance CT Page 3144 therewith.
I. Motion to Correct
Practice Book § 439 provides that
 if a committee fails to correct a report or finding in compliance with a motion to correct, the moving party may, within ten days after the decision on the motion to correct, file exceptions seeking corrections by the court in the report or finding. The court will not consider an exception unless its subject matter has been submitted to the committee in a motion to correct . . . ; nor will the court correct a finding of fact unless a material fact has been found without evidence or the committee has failed to find an admitted or undisputed fact, or has found a fact in such doubtful language that its real meaning does not appear. A party excepting on these grounds must file with his exceptions a transcript of the evidence taken before the committee, except such portions as the parties may stipulate to omit.
Though this Section, on its face, applies only to committees, it has been held by our Supreme Court, in Seal Audio, Inc. v.Bozak, Inc., 199 Conn. 496, 502-03 (1986), to apply to attorney State trial referees as well.
By its plain language, Section 439 permits corrections of the factual findings of referees, not of their legal conclusions. The latter, of course, can only be made by filing an objection to acceptance of report under Practice Book § 440. Moller and Horton, 1 Practice Book Annotated, 3d Ed., p. 640-42.
The types of factual errors which may properly be corrected on a motion under Section 439, moreover, are narrowly limited to the following: "(a) a fact found without evidence; (b) a failure to find a fact that is admitted or undisputed; or (c), a fact of doubtful meaning." Id., citing CT Page 3145Whewell v. Ives, 155 Conn. 602, 608-09 (1967). Furthermore, this limited review must be conducted with the aid of a transcript of the evidence taken before the referee, except such portion as the parties may agree to omit. The enforcement of this requirement ensures that court's "correction," if any, of the facts, is merely that: a correction to bring the finding into conformity with the indisputable facts of record, not a brand-new, post hoc
finding of contested facts by a judge who did not try the case.
Against this background, there are several reasons why the defendant's motion to correct must be denied. First, the defendant has failed to support his motion to correct with a transcript of the evidence taken before the Referee. Absent a stipulation by counsel either that an undisputed fact wasnot found or that a fact wholly unsupported by the record was
found, the failure to supply a transcript is fatal to the defendant's motion.
Second, of the five corrections to the Report which the defendant has requested, four seek changes which this Court could not make even if it had a complete transcript of the proceeding before the Referee. Two request the drawing of new and/or different inferences from the evidence rather than the rejection of facts found without evidence or the acceptance of admitted or undisputed facts which were somehow overlooked.[3]
To reiterate, it is not the Court's function to second-guess the Referee. Rather, it is to ensure that the Referee's factual findings are supported by the record on which they are based. If they are, they may not be disturbed on a motion to correct.
Two other requests made in the defendant's motion to correct inappropriately ask the Court to draw different legal conclusions from the facts presented than those which were drawn by the Referee.[4] That, to reiterate, is not the Court's task on a motion to correct, which may only be used to seek the correction of one of three types of factual errors.
In sum, the Court concludes that the defendant's motion to correct is largely misdirected in substance and wholly unsupported by a proper record of the hearing below. For those reasons, it must be, and hereby is, denied. CT Page 3146
II. Objection to Report
 A.
The defendant's first claim in opposition to the acceptance of the Referee's corrected Report is that the Referee committed legal error by refusing to find that the plaintiff was barred from pursuing her claim because she failed to notify him within one year of the claimed defects in his workmanship which underlie her claim. In support of this contention, he argues that although he is barred by settled Connecticut case law from enforcing any home improvement contract which he enters without a valid Connecticut home improvement license, he can nonetheless rely on the one-year notice provision of the contract to defeat the plaintiff's claim because she herself has relied on the contract as a basis for recovering attorney's fees incurred in this case. By asserting that the contract is valid and enforceable for one purpose, claims the defendant, the plaintiff must accept its validity and enforceability for all purposes. Therefore, he concludes, that portion of the plaintiff's action which relies on the provisions of her home improvement contract must fail because she failed to give notice of her claim within one year of the work complained of, as the contract required.
In support of this argument, the defendant relies principally upon the language of C.G.S. § 20-429(a), which provides that, "No home improvement contract shall be valid or enforceable against an owner unless it: . . . (8) is entered into by a registered salesman or registered contractor." Claiming that he terms "valid" and "enforceable" are two separate and distinct statutory terms, each which must be accorded a distinct and different meaning in and for the purpose of the statute, the defendant would have the Court interpret them as follows: The term "valid," as used in the statute, is not qualified by other statutory language, whereas the term "enforceable" is qualified by the phrase which follows it, "against an owner." Therefore, claims the defendant, a home improvement contract which fails to satisfy the requirements of Section 20-429(a) is invalid as to everyone who enters into it, but may yet be enforced against every party thereto except an owner.
At first blush, the foregoing reading of the statute presents an obvious contradiction, for any contract which is CT Page 3147 invalid is unenforceable and, by the same token, any contract which is enforceable is necessarily valid. According to the defendant, however, this contradiction can readily be resolved by treating every home improvement contract which does not comply with the statute's requirements as presumptively invalid unless the homeowner, at his sole option, claims to the contrary by attempting to enforce it. Insisting that an owner's assertion of rights arising under a non-complying contract must necessarily be based on a claim that the contract is valid, the defendant argues that any effort to enforce the contract must be treated as a waiver of any claim that it is invalid. With such a waiver, concludes the defendant, the validity of the contract is restored for all purposes — including, particularly, the assertion of contractual defenses to the owner's claims.
The Court rejects the defendant's analysis for several reasons. First, the language of the statute does not, by its terms, establish a waivable defense of contractual invalidity, as the defendant has argued. Such a defense could easily have been established by providing, for example, that "no home improvement contract which fails to comply with the following requirements shall be valid or enforceable against an owner unless the owner asserts its validity by attempting to enforce it on his own behalf." The use of this or similar language would clearly have conveyed the intent of the legislature to create a presumption of invalidity, which only a homeowner could waive or assert. No such language, however, was used.
Instead, the legislature flatly declared that a noncomplying home improvement contract "shall not be valid or enforceable against an owner." This mandatory provision contains no exceptions, qualifications or conditions. It does not, moreover, employ the language of presumption or waiver. In short, it establishes in the clearest and most unequivocal of terms that a non-complying home improvement contract shall never be valid or enforceable against an owner.
For that reason, the defendant's proposed construction of the provision is simply inconsistent with the provision's own terms.
The second reason for rejecting the defendant's statutory analysis is that the language of the provision is question is susceptible to another, more logical construction. Under such a construction, the terms "valid" and "enforceable," as used CT Page 3148 in the statute, would both be modified by the qualifying phrase which follows them, "against an owner," with the result that any contract which fails to meet the statute's strict requirements for home improvement contracts would be valid and enforceable by an owner even though it would not be valid or enforceable against him.
This reading of the statute is fully consistent with the grammatical structure of the statute, well supported by its consumer-protective purpose, and confirmed by controlling case law which interprets and applies the statute in other contexts.
It is true, of course, that a statute should be so construed that no word or phrase in it is treated as superfluous or insignificant. Kulis v. Moll, 172 Conn. 104,111 (1976). "Insofar as it is possible, the entire enactment is to be harmonized, each part made operative." State v.Grant, 176 Conn. 17, 20 (1978).
This does not mean, however, that each word or phrase used in a statute must necessarily be accorded a different meaning than every other word or phrase in the statute. Instead, where the context so suggests or requires, words with similar, overlapping, or even identical meanings may properly be read together to declare or establish a single statutory rule, principle, or requirement. See, e.g., State v. Rogue,190 Conn. 143, 150-54 (1983). It has thus been held that, "`where two or more words of analogous meaning are employed together in a statute, they are understood to be used in their cognate sense, to express the same relations, and give color and expression to each other.'" Id., 153 (quoting from Peoplev. Goldman, 7 Ill. App.3d 253, 255, 287 N.E.2d 177 (1972).
Here, for reasons which both parties appear to acknowledge, the terms "valid" and "enforceable" have closely analogous meanings. By common logic, that which is not valid cannot be enforced. Therefore, by stating that in certain circumstances (viz. failure to meet the requirements by Section 20-429(a)), a contract is not valid, one states by necessary implication that that contract cannot be enforced.
Absent any indication in the statute that the words valid" and "enforceable" are to be given meanings at variance with their common meanings in our language, they must fairly CT Page 3149 be read and understood "in their cognate sense, to express the same relations, and give color and expression to each other."Id. As modified by the phrase, "against an owner," they therefore establish a single rule: that any contract which fails to satisfy the requirements of Sections 20-429(a) is not binding upon any homeowner who enters into it, though it remains binding upon all non-owner parties thereto.
This conclusion is supported by the purpose of Section20-429(a), which is to protect innocent homeowners from unlicensed, incompetent and/or unscrupulous home improvement contractors. If the statute is read to make non-complying home improvement contracts invalid and unenforceable only
against homeowners, then contractors will be given a considerable incentive to bring their contracts into compliance with the statute's requirements. That incentive, simply stated, is the awareness that in any dispute between himself and the homeowner, the contractor will have no defense or independent right of action under the contract, whether or not he fully performs thereunder.
If, however, the statute were read to invalidate any noncomplying home improvement contract as to all parties, but to give the homeowner the right to enforce it with the caveat that in that event, its validity is restored as to all parties, who may then assert contractual defenses, the contractor's incentive to comply with the statute would be greatly diminished. In that event, the contractor could freely enter into a non-complying contract, deriving whatever illicit benefits might flow therefrom, with certain knowledge that he could later assert a full range of contractual defenses to defeat any claim the homeowner might bring against him. Far from an incentive to comply with the provisions of Section 20-429(a), such knowledge might actually encourage non-compliance with the statute, all to the peril of innocent homeowners, the statute's intended beneficiaries. Against this background, Section 20-429(a) must be read to prohibit non-complying contractors from enforcing any rights under home improvement contracts which do not satisfy the statute's requirements.
Connecticut case law confirms the foregoing analysis, holding that contractors cannot enforce home improvement contracts which do not comply with Section 20-429(a) under any circumstances unless the homeowner himself has committed fraud CT Page 3150 by entering into the contract. Thus in interpreting the provisions of C.G.S. Section 20-429 the Connecticut Supreme Court stated in Barrett Builders v. Rhoda Miller, 215 Conn. 316
(1990) that the requirements of the statute are "mandatory rather than permissive" and that "the legislature intended no exceptions to the written contract requirement, even for restitution when a contractor has fully performed its obligations under the invalid agreement." Id. at 321-22. Consequently, the Barrett Court held that the plaintiff contractor was barred from his claim to recover the value of goods and services rendered to the defendant homeowner due to the plaintiff's noncompliance with the provisions of C.G.S. Section 20-429, absent proof of bad faith on the part of the homeowner, whether the work performed was defective or not. The Barrett Court explained this result as follows: "It bears emphasis that the Home Improvement Act "was passed for the protection of the public. Caulkins v. Petrillo, supra, 720. As we have consistently reaffirmed, remedial legislation must be construed liberally . . . . and we have likewise held that the construction of consumer protection statutes is not limited by the rule that statures in derogation of the common law must be strictly construed." Id., at 323. The Barrett
Court further stated that". . . a person who does not comply with the statutory requirements `will not be given the assistance of the courts in enforcing contracts within the provisions of the regulatory statute because such enforcement is against public policy'" Id., at 324. "Clearly, the legislature is entitled, in the first instance, to impose the burden of compliance with the statute on the professional, the contractor, rather than on the nonprofessional, the consumer. Viewing the continued incidence of complaints about home improvement contractors, the legislature could legitimately view as more urgent the need to protect consumers from unscrupulous contractors than the need to protect innocent contractors from manipulative consumers." Id., at 826-27.
The only exception to the requirements of C.G.S. Section20-429 recognized by the Court is where the homeowner has acted in bad faith. No such bad faith has been alleged or proven here. It is the burden of the party asserting the bad faith to establish its existence. Habez v. Condon, 224 Conn. 231,237 (1992). The only act that plaintiff is guilty of is upholding her part of the Contract and paying the defendant in full in a timely fashion. Had plaintiff not paid the defendant for his work, he would not have been able to recover CT Page 3151 the value of his materials or services due to his noncompliance with C.G.S. Section 20-429, even if he had fully performed under the terms of the Contract.
In Wadia Enterprises, Inc. v. Hirschfeld, 224 Conn. 240
(1992), the Connecticut Supreme Court held that the plaintiff contractor could not prevail on its claim that, because the defendant homeowners enforced certain provisions of the contract and had made payments pursuant to it, they impliedly waived the right to raise the invalidity of the contract. The plaintiff contractor had argued that the defendant homeowners had acted in bad faith by asserting the protection of C.G.S. Section 20-429 in order to avoid payment, after first attempting to enforce their rights under the contract. TheWadia Court stated found that the plaintiff contractor had not provided any evidence that would raise a genuine issue relating to bad faith, waiver, estoppel and/or consent on the part of the defendants. Id., at 246. The Wadia Court stated that bad faith is "more than negligence, it involves a dishonest purpose. Id., at 248. There has been no evidence or findings in the case at bar that the plaintiff has been guilty of any dishonest purpose. The plaintiff contractor inWadia claimed that the defendant homeowners impliedly waived the protection of C.G.S. Section 20-429 by enforcing certain provisions of the contract and making payments pursuant to the contract. The Court held that in absence of proof that the defendant homeowners knew about the requirements of C.G.S. Section 20-429 prior to seeking to enforce the contract, they were legally entitled to assume that the contract was valid.
A homeowner who suffers a breach of contract by a home improvement contractor under an unenforceable contract may still recover damages for breach of said contract.See Sidney v. DeVries, 215 Conn. 350 (1990). In an action brought by a homeowner against a home improvement contractor for defective work, the Sidney Court found for the defendant contractor, not because the homeowner was barred from enforcing the provisions in the contract regarding the work to be performed by the defendant contractor and the quality of the workmanship, but because the homeowner was unable to prove
breach of the contract by the defendant contractor. Implicit in the Sidney decision was that the homeowner had the right to bring suit for damages due to the contractor's breach of contract, even while defending the contractor's counterclaim CT Page 3152 on the basis that his recovery was barred by noncompliance with the provisions of C.G.S. Section 20-429. Accordingly, the Sidney Court held that the defendant contractor could not collect the $27,850 owed to him under his non-complying contract, even though there was no proof that he had breached the contract.
 B.
The second ground upon which the defendant objects to the acceptance of the Referee's corrected Report is that the Referee refused to rule that the plaintiff consented to the quality of his workmanship by paying him at the end of each work week without objecting to any alleged defects in his work which by then should have become obvious to her. The Court rejects the defendant's argument for the following reasons.
First, the parties' contract imposed no obligation on the plaintiff to inspect the defendant's work before paying for it, and certainly cannot be read to imply that the tender of any weekly payment for work performed thereunder could be deemed to constitute acceptance of the work "as is." In fact, as previously noted, the contract itself afforded the plaintiff one full year to complain about the quality of the defendant's work, and made no distinction whatsoever between defects which were visible to or otherwise detectable by the plaintiff and those which were not. Indeed, as the Referee expressly found in response to the defendant's motion to correct, each weekly bill submitted to the plaintiff by the defendant contained a reminder that complaints about the defendant's work were to be made in writing within twelve months of the date of the work. Though the inclusion of the language of this unenforceable provision in each weekly bill was surely designed to shield the defendant from any claims for warranty repairs the plaintiff might make more than one year after work on the project was completed, it likewise informed the plaintiff that she could appropriately present any such claim, without limitation or qualification, within that one-year period.
Second, the defendant's argument is based on false assumptions about the nature of construction work in general and the reasonable expectations of the parties as to the basis upon which work on this project would be billed and paid for in particular. CT Page 3153
Construction work is not always performed in neat, distinct, readily separable sequential phases, one of which is fully completed before the next begins. Instead, it often requires the completion of many different tasks or phases simultaneously, with no one phase even approaching completion until the entire project is very nearly over.
Against this background, it is often very difficult for a contractor to agree to be paid for his work on a construction project on a task-completion basis. If such a payment method were adopted, and payment were conditioned upon the payor's final acceptance of the contractor's work, the contractor might be forced to work for many weeks or months, purchasing necessary supplies, leasing and/or maintaining essential tools and equipment, and attempting to meet its payroll, before receiving its first payment for its work. Plainly, such an arrangement could impose great hardship on the contractor, and might threaten his ability to fulfill his contractual obligations.
To avoid these very difficulties, contractors frequently insist on being paid on a periodic basis throughout the terms of their contracts. In this case, in fact, the defendant made just such an arrangement by agreeing with the plaintiff to be paid each week for all labor performed and supplies purchased during that week. This arrangement did not condition payment upon the completion of any particular job, task or portion of the agreed upon work. Thus it was obviously not conditioned upon the plaintiff's pre-payment inspection, acceptance or approval of the quality of such work.
Finally, even if one were to focus only on the plaintiff's final payment to the defendant, when all work on the project had ostensibly been performed, it would still be impossible to say that the plaintiff, by paying the defendant without objection, impliedly consented to the quality of his workmanship. Initially, to reiterate, the contract itself gave her one full year to give written notice of her complaints to the defendants. Secondly, it did not require her to inspect the defendant's work before she tendered any payment thereunder, and in fact suggested that she was to pay on schedule whether or not she was yet aware of any grounds for complaint. Thirdly, the facts found by the Referee do not indicate precisely when any of the several defects of which CT Page 3154 the plaintiff now complains could first have been noticed by her. Whether or not any of those defects could have been detected by the plaintiff before she made her final payment on September 7, 1990 is simply not established by the Referee's findings. It is therefore a matter on which this Court can only speculate, which it respectfully declines to do.
In sum, the Court must conclude that even if the defendant's theory of implied waiver by payment without objection to manifest defects were legally viable — which in this case it is not — the factual basis upon which such a claim might be presented has not been established.
For all of the foregoing reasons, the Court rejects the defendant's second and final ground for rejection of the Referee's corrected Report, and concludes that that Report should be accepted, and that judgment for the plaintiff should be entered thereon.
Michael R. Sheldon Judge