[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff initiated the present action to foreclose a mechanic's lien and to recover a balance allegedly due under a painting contract by way of a complaint dated March 12, 2001. The defendants filed Motions to Discharge the Mechanic's Lien and for Discharge of Notice of Lis Pendens on June 13, 2001. On July 19, 2001, the defendants, in addition, filed an Answer, Special Defenses and Counterclaim to the plaintiff's action. The defendants have denied liability on the grounds that the plaintiff's failure to comply with the requirements of the Home Improvement Act, General Statutes §§ 20-420, 20-427 and 20-429, invalidated the lien and precluded recovery by the plaintiff.
The defendants filed three special defenses concerning the plaintiff's failure to comply with the Home Improvement Act and a counterclaim alleging that the plaintiff's violation of the Home Improvement Act entitled them to compensatory damages, punitive damages and attorney's fees under the Connecticut Unfair Trade Practices Act (hereinafter CUTPA). The defendants subsequently, by way of an Amended Counterclaim dated July 25, 2001, amended their counterclaim to included damages for a breach of contract by the plaintiff; unsatisfactory performance of the work; and a failure by the defendant to timely perform or complete the work called for in the contract between the parties.
The parties appeared in court on July 23, 2001, on the defendants' application to discharge the mechanic's lien and to obtain a release of the lis pendens. At that time, the plaintiff stipulated to their discharge and release, and the plaintiff withdrew his foreclosure complaint.
In addition to the breach of contract claims, the defendants have CT Page 6431 alleged in their Amended Counterclaim several ways in which the plaintiff has violated the Home Improvement Act. First, the defendants claim that the plaintiff solicited a contract for home improvements when he was not licensed by or registered with the Department of Consumer Protection. Secondly, the plaintiff entered into a contract with the defendant homeowners which did not contain dates for the start or completion of the work. Third, the said contract lacked notice of the owner's cancellation rights. Fourth, the contract was not entered into by a salesman or contractor registered under the Home Improvement Act. Fifth and lastly, the defendants claim that the contract was obtained by the plaintiff's falsely representing to the defendants, that he was, in fact, licensed by the Department of Consumer Protection, in order to induce the defendants to enter into the contracts for the painting of the interior and exterior areas of their home, and as such, constituted an unfair trade practice in violation of General Statutes § 20-427 (b) and General Statutes § 42-110b.
The defendants, thereafter, claimed the matter to a trial by the court on September 24, 2001. The trial and the taking of evidence commenced on December 14, 2001 and thereafter, to January 3, 2002. The court then requested that each party submit a legal memorandum of law on or before January 18, 2002.
The court having reviewed the evidence and legal arguments of the parties finds that on January 22, 2000, the plaintiff Ciuffi and the defendant, Deborah Jerolman, entered into a contract, whereby the plaintiff was to perform interior painting work on the residential premises located at 25 Standard Avenue, Branford, Connecticut. Said premises was owned by the defendant Deborah Jerolman and her husband, defendant Gregory Jerolman. The contract price was $13,800, consisting of material charges in the amount of $1800 and labor charges totaling $12,000. On January 22, 2000, the defendant Deborah Jerolman paid the plaintiff Ciuffi, the sum of $5,900 to commence work. At the time the contract was solicited and signed, the defendant was not licensed or registered with the Department of Consumer Protection pursuant to General Statutes § 20-420 of the Home Improvement Act.[1] The contract did not meet the statutory requirements of General Statutes § 20-429 (a) (6)(7)(8)[2] in that it did not contain a notice of the owners' cancellation rights; it did not contain a starting date and completion date; and was not entered into by a registered salesman or registered contractor.
As the work to be performed by the plaintiff Ciuffi, was the painting of the defendant's resident, it is clear that this work constituted a home improvement as defined in General Statutes § 20-419[3]
Therefore, the defendant was not in compliance with General Statutes CT Page 6432 § 20-420. T.D.S. Painting and Restoration, Inc. v. Copper BeachFarm, Inc., Nos. CV 92 01244 88, and CV 93 0130403 (Superior Court, judicial district of Stamford/Norwalk at Stamford, March 4, 1996) (Lewis, J.); 1996 Ct. Sup. 1720; 1996 WL 179887 (Conn.Super.).
On January 22, 2000, The defendant, Deborah Jerolman, and the plaintiff also entered into a contract for exterior painting at the defendants' residence. The contract was for the sum of $8600. That contract, as well, was in violation of the Home Improvement Act, for identical reasons.
The plaintiff commenced painting the interior of the defendants' premises on February 2, 2000, and informed the defendants that he would complete the interior work in approximately three weeks. On February 9, 2000, the defendants paid the plaintiff an additional payment of $4,000. Shortly thereafter, the plaintiff and the defendants began to argue about the quality of the plaintiff's painting work, and the speed of the plaintiff's work. However, the plaintiff continued to perform painting services on the interior of the defendants' residence through Friday, February 25, 2000. On February 28, 2000, the defendants, by telephone, informed the plaintiff that he was not to return to their premises and thereby discharged the plaintiff. The defendants on or about March 2, 2000, paid the plaintiff a final additional payment of $425. Total payments by the defendants to the plaintiff were $10,325 as against the contract price of $13,800 for interior painting work.
Thereafter, the defendants hired Kevin Noccioli, Sr., doing business as, Personal Touch Painting, to complete the interior painting work, and to proceed with the exterior painting of the premises. Mr. Noccioli is the former husband of the defendant, Deborah Jerolman. The defendants agreed to pay Mr. Noccioli the sums of $2,250 for "touch up" in the interior, $250 for "new work" in the interior; $750 for "extras" in the interior; and $9,500 for exterior painting work. Sales tax on the interior work, as listed, was totaled as $202, and sales tax for the exterior work was totaled as $455. Thus, the interior work, as indicated, would cost $3,452 and the exterior work would cost $9,955.
In reviewing the written agreements for interior and external painting between the defendants and Mr. Noccioli, the court finds that these unsigned proposals are not dated; they do not provide for owners' cancellation rights; and they do not contain start dates and completion dates. The "proposals" with Mr. Noccioli, which are full exhibits, also violate the Home Improvement Act.
The defendants submitted six cancelled checks payable to Mr. Noccioli, totaling $15,092 for a combination of interior and exterior painting, CT Page 6433 despite the written proposals for painting work totaling $13,407. While the notations on the checks made by the defendant Deborah Jerolman are vague, the court finds that a check dated March 27, 2000 in the amount of $1,726, and a check dated April 20, 2000 in the amount of $1,000 are both payments for interior painting. A check dated May 1, 2000 in the amount of $1,588 was payment for a "fence and interior, excluding sunroom" Testimony reveals that the cost for the exterior fence was $802. The balance of $786, therefore, is allocated to interior work. It is noted that the proposal by Mr. Noccioli for external painting does not include a fence, while plaintiff Ciuffi's contract for external work does include fencing.
A fourth payment check to Mr. Noccioli, dated May 9, 2000 in the amount of $5,000 represented an initial deposit for exterior painting, and a fifth check dated July 6, 2000 in the amount of $5,238 is labeled as "final payment-painting." The sixth and last payment by the defendants to Mr. Noccioli is dated January 30, 2001, and is in an amount of $540. This payment bears the notation of "paint touch ups and maintenance work." The court is unable to determine what this final payment was for and whether it was for internal or external painting.
The court finds that the defendants contracted for internal painting work from the plaintiff Ciuffi in the amount of $13,800. They paid the plaintiff $10,325, and they paid Mr. Noccioli the sum of $2,250 to complete the contract work. The defendants have failed to sustain their burden of proof that they incurred a financial loss on the contract to paint the intenor of their residence.
As to the contract for the exterior painting of their residence by Mr. Ciuffi, the court finds that the defendants, by discharging Mr. Ciuffi prior to his commencement of exterior painting work, repudiated and anticipatorily breached the exterior painting contract, and thereby made it impossible for Mr. Ciuffi to perform. It is clear from the defendants' testimony at trial, that they jointly decided to discharge the plaintiff on February 28, 2000, and they communicated to the plaintiff that he was not to return to their premises for interior or exterior painting work. Subsequent to that conversation, they paid a final installment payment to the plaintiff on March 2, 2000. The defendants cannot now claim the benefit of that contract. Additionally at the defendants' request, the court has found, that the contract itself, is in violation of the Home Improvement Act.
As noted earlier in this decision, the plaintiff filed a Notice of Lis Pendens and a Mechanic's Lien against the defendants' real property located at 25 Stannard Ave., Branford, in the Town Clerk's office on March 14, 2000. On March 28, 2001, the plaintiff filed a court action CT Page 6434 seeking a foreclosure of said mechanic's lien. On or about March 24, 2000, the defendants engaged the services of an attorney in an attempt to resolve the mechanic's lien, prior to the commencement of any legal action by the plaintiff. The defendants have presented a bill from said attorney for services rendered in their belief on various dates from March 24, 2000 through August 15, 2000, totaling $615. While the services are itemized, the hourly billing rate and actual time spent are not itemized. In reviewing the bill and the services rendered, the court finds the amount of the bill to be reasonable, given the court's knowledge of the prevailing rates charged by attorneys in the greater New Haven area for similar types of services.
During the course of the trial, the defendants and their attorney also testified that the defendants had incurred legal fees to their present attorney in an amount of $2,465.30 for defense of the plaintiff's foreclosure of mechanic's lien action, and an additional attorney's fee of $3191.30 for the defendants' prosecution of their counterclaim against the plaintiff. Itemized copies of their present attorney's billing statements were submitted to the court as exhibits in conjunction with the attorney's testimony under oath.
General Statutes § 20-427 (c)[4] states that a violation of the provisions of the Home Improvement, "shall be deemed an unfair or deceptive trade practice under subsection (a) of § 42-110b," which prohibits unfair trade practices. General Statutes § 42-110g (a) states that "any person who suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment of a method, act or practice prohibited by § 42-110b, may bring an action. . . . to recover actual damages." Section 42-110g (d) also allows the court to award costs and reasonable attorneys' fees "based on the work reasonably performed by an attorney and not on the amount of recovery." In addition to any damages found, the court may, under §42-110g (d), order other equitable relief. The court additionally has the authority pursuant to § 42-110g (a) to award punitive damages.
The court has found that the defendants cannot recover any claimed ascertainable damages on the two contracts entered into with the plaintiff. The question to resolve, therefore, is whether, as a result of the plaintiffs' violation of the Home Improvement Act and, thus, CUTPA, the defendants are entitled to their attorneys' fees, punitive damages, costs and/or other equitable relief.
The court finds that the defendants have sustained ascertainable damages in that they have incurred attorney's fees in defending the foreclosure of the mechanic's lien action filed by the plaintiff. The plaintiff filed his action with the knowledge that he was not licensed or CT Page 6435 registered under the Home Improvement Act when he entered into the painting contracts; when he filed the mechanic's lien and lis pendens; and when he commenced his court action.
To protect their financial interest and to protect their ownership rights in their real estate, the defendants incurred attorneys' fees in the amount of $3,080.30. The plaintiffs' actions in filing the mechanic's lien, lis pendens and foreclosure action were aggravating acts, and were unfair and deceptive actions against the defendants who were consumers. These actions by the plaintiff-contractor are in violation of the public policies evidenced by the Home Improvement Act. During the sixteen month period between March 14, 2000, when the mechanic's lien and lis pendens were filed and the plaintiff's withdrawal of his foreclosure action, on or about July 23, 2001, the plaintiff made no effort to correct this situation despite the defendants' demands. The plaintiff continued to require the defendants to incur monetary losses and damages by way of incurring additional fees for legal representation.
The plaintiff contractor in filing a mechanic's lien and a subsequent foreclosure of said lien was attempting to enforce rights to collect money that he had no right to collect. Contractors who are not in compliance with Home Improvement Act, are prohibited from enforcing rights under home improvement contracts which do not comply with the requirements of the Home Improvement Act. Guze v. Warner,1995 Ct. Sup. 3139, Superior Court docket no. CV 92 0515641 (judicial district of Hartford-New Britain at Hartford, March 31, 1995) (Sheldon, J). The plaintiff cannot be given the assistance of the courts in enforcing a contract which was in violation of the statutory requirements of the Home Improvement Act because such enforcement would be against public policy.Barrett Builders v. Miller, 215 Conn. 316, 323-24 (1990).
The court finds that the defendants have incurred an ascertainable loss of money damages as a result of the plaintiff's violation of the Home Improvement Act and CUTPA in the amount of $3,080.30, representing attorneys' fees incurred while defending themselves against the plaintiffs' claim for a mechanic's lien and a foreclosure of said lien.
In finding that the plaintiff violated the Home Improvement Act, the plaintiff has also engaged in an unfair trade practice pursuant to General Statutes § 20-427 (c) and 42-110b (a). In accordance with General Statues § 42-110g (d)[5] the court in its discretion may award the defendants a reasonable attorneys fee and costs. At trial, evidence was presented by the defendants that subsequent to the plaintiffs' withdrawal of his complaint for a foreclosure of the mechanic's lien, the defendants incurred an additional sum for attorneys' fees in the amount of $3741 to prosecute their counterclaim. The counterclaim as described herein, CT Page 6436 alleged a violation of the Home Improvement Act, a CUTPA violation, and a breach of contract by the plaintiff.
A moving party must prevail on its CUTPA claim before an attorneys' fee may be awarded under the act, and any award of an attorneys' fee is discretionary. Vezina v. Nautilus Pools, Inc., 27 Conn. App. 810,610 A.2d 1312 (1992); Hinchliffe v. American Motors Corp., 184 Conn. 607,617, 440 A.2d 810, 816 (1981). The defendants have not prevailed in their claim that the plaintiff has breached the contracts. Therefore, attorneys' fees can only be awarded for work by their attorney related to the claim of violation of CUTPA. Roven Corp. v. Baldwin-StewartElectric, Co., 8 CSCR 905 (July 23, 1993) (Reynolds, STR),1993 Ct. Sup. 6715. The court finds that twenty-five percent of the attorneys' fees incurred by the defendants, subsequent to the plaintiffs' withdrawal of his foreclosure action, were related to the defendants' claim that the plaintiff violated CUTPA. The remaining seventy-five percent of the attorneys' fee was related to the defendants' claim that the plaintiff breached the contracts for painting work at the defendants' residence. The court therefore awards the defendants the sum of $935 for attorneys fees in addition to their costs. The court does not assess or award any punitive damages.
Lastly, the court addresses the question of whether the defendants' failure to file a copy of their counterclaim, alleging a CUTPA violation, with the office of the Attorney General and the Commissioner of Consumer Protection gives rise to a question of the court's jurisdiction to hear the defendants' counterclaim. General Statutes § 42-110g (c) states:
 "Upon commencement of any action brought under subsection (a) of this section, the plaintiff shall mail a copy of the complaint to the Attorney General and the Commissioner of Consumer Protection. . . .
The court finds that the defendants' failure to file a copy of the counterclaim with the Attorney General and the Department of Consumer Protection is not a jurisdictional defect. The court in doing so, relies upon the decisions in Cooke's Equipment Company v. Stack,1990 Ct. Sup. 2589
(Oct. 12, 1990) (Hadden, J.); Daddona v. Liberty Mobilehome, Inc.,3 CSCR 268 (Meadow, J.); and Cole v. Metropolitan Property and LiabilityInsurance Company, 10 Conn. L. Trib. No. 45, p. 7 (Dist. Conn. June 10, 1984) (Burns, J). At most, this failure by the defendants is a curable jurisdictional defect, and the defendants did cure the defect by mailing said notice to the office of the Attorney General and the Department of Consumer Protection on January 10, 2002. CT Page 6437
Accordingly, judgment shall enter for the defendants in the amount of $3,080.30. The court additionally awards the defendants the sum of $935 in attorneys' fee, lus costs.
Arnold, J.